1  BENBROOK LAW GROUP, PC
   BRADLEY A. BENBROOK (SBN 177786)
2  STEPHEN M. DUVERNAY (SBN 250957)
   701 University Avenue, Suite 106
3  Sacramento, CA 95825
   Telephone: (916) 447-4900
4  brad@benbrooklawgroup.com

5  Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIREARMS POLICY COALITION, INC.; CALIFORNIA GUN RIGHTS FOUNDATION; SAN DIEGO COUNTY GUN OWNERS PAC,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO; COUNTY OF IMPERIAL; COUNTY OF ALAMEDA; COUNTY OF VENTURA; COUNTY OF LOS ANGELES; CITY OF SAN JOSE; and COUNTY OF SANTA CLARA,<br><br>Defendants. | Case No.: 3:23-cv-00400-LL-DDL<br><br>**PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE (ECF. No. 18)** |

The Court has ordered Plaintiffs to show cause why their claims are justiciable, why venue is proper in this District, and why all Defendants are properly joined in this action. In response, Plaintiffs respectfully submit as follows.

## I.  Plaintiffs Have Standing and Their Claims Are Ripe.

This suit challenges the one-sided fee-shifting provisions of California Senate Bill 1327, codified at California Code of Civil Procedure Section 1021.11, which makes any plaintiff who seeks declaratory or injunctive relief against a state or local firearm regulation (as well as the plaintiffs' attorneys) liable for the government's attorneys' fees and costs if the court rules against the plaintiff on any claim for any reason. In *Miller v. Bonta*, No. 3:22-cv-1446-BEN-MDD, --- F. Supp. 3d ----, 2022 WL 17811114 (S.D. Cal. Dec. 19, 2022) ("*Miller*"), this Court held that this provision violates the First Amendment, by abridging the expressive freedom "to petition the Government for a redress of grievances," U.S. CONST. amend. I; the Supremacy Clause, U.S. CONST. art. VI, cl. 2, by undermining the purpose and effect of the federal fee-shifting regime for civil-rights cases established in 42 U.S.C. § 1988; and the Equal Protection and Due Process Clauses, U.S. CONST. amend. XIV, § 1, by putting a price on certain litigants' access to the courts. The Court therefore permanently enjoined the California Attorney General, Governor, and their agents from enforcing Section 1021.11. See Judgment ¶ 4, *Miller*, ECF No. 49 (Mar. 20, 2023).

Before issuing that injunction, the Court explicitly held that the plaintiffs' claims in that case were justiciable and rejected the State's arguments to the contrary. *See* Defs.' Opp. to Pls.' P.I. Mot. at 17–20, *Miller*, ECF No. 22 (Oct. 31, 2022) ("*Miller* Att'y Gen. Br.") (Attorney General arguing that the plaintiffs lacked standing or ripe claims); Intervenor-Def.'s Supp. Br. at 17–18, *Miller*, ECF No. 35 (Dec. 12, 2022) (Governor adopting these justiciability arguments). The plaintiffs, who included the Plaintiffs here, submitted declarations attesting that Section 1021.11's threat of ruinous fee liability had forced them to dismiss or refrain from filing constitutional challenges to state-level firearms regulations. *See* Decl. of Brandon

1  Combs, *Miller*, ECF No. 14-2 (Oct. 7, 2022) (on behalf of Firearms Policy Coalition); Decl. of Michael Schwartz, *Miller*, ECF No. 14-6 (Oct. 7, 2022) (on behalf of San Diego Gun Owners PAC). "Based on these declarations," the Court held, "there was at the filing of the instant action(s) a ripe case or controversy based on actual injuries-in-fact which continues to the present." Order at 6:3–4, *Miller*, ECF No. 27 (Dec. 1, 2022) ("*Miller* Justiciability Order"). Those injuries were "concrete and particularized, actual and imminent, and not conjectural or hypothetical." *Id*. at 6:9–10. And Plaintiffs' claims remained justiciable (*i.e.*, were not moot) even though, after the suit was filed, the Attorney General had agreed not to enforce Section 1021.11 unless and until courts upheld the fee-shifting provision in Texas's SB 8, on which Section 1021.11 was based. *See id*. at 6–8.

Plaintiffs' claims in this case are justiciable for the same reasons that this Court found their claims justiciable in *Miller*. Plaintiffs sought and obtained the *Miller* injunction in order to restore their constitutional rights to access the courts in challenges to state-level firearm regulations. As detailed in the declarations attached to Plaintiffs' Motion for Preliminary Injunction or Summary Judgment, which Plaintiffs are filing simultaneously with this Response, Plaintiffs also intend to bring Second Amendment challenges to local-level firearm regulations in the Defendant localities. But such challenges are also subject to Section 1021.11's one-sided fee-shifting regime, and Defendants, who were not parties in *Miller*, are not subject to the *Miller* injunction.

If not for Section 1021.11, Plaintiffs would forthwith engage in the litigation outlined in their declarations. But Plaintiffs are in the same position here as they were in *Miller*: the threat of ruinous fee lability has forced them to dismiss or refrain from filing constitutional challenges to firearm regulations. The only difference is the governmental entities that issued those regulations and thus the government defendants that might be entitled to fees.

| | |
|---|---|
| 1 | As the Court recognized in *Miller*, this "self-censorship" is a sufficient Article |

As the Court recognized in *Miller*, this "self-censorship" is a sufficient Article III injury "even without an actual prosecution." *Virginia v. Am. Booksellers Ass'n, Inc.* 484 U.S. 383, 393 (1988); *see also, e.g.*, *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022) ("We have held that a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." (internal quotation marks omitted)). And as the Court further recognized, this injury creates a ripe claim. "Ripeness is a question of timing," requiring that a plaintiff have standing at the time of filing. *Miller* Justiciability Order at 3:5. When this suit was filed, Plaintiffs had already suffered a cognizable injury: they were forced to dismiss or refrain from bringing constitutional challenges to Defendants' firearm regulations because Defendants had not agreed to refrain from enforcing Section 1021.11. And that injury is ongoing. *Arizona Right to Life Political Comm. v. Bayless*, 320 F.3d 1002, 1007 n.6 (9th Cir. 2003) ("*ARLPAC*") (fact that plaintiffs have "suffered actual harm dispenses with any ripeness concerns"). Indeed, unlike in *Miller*, Defendants have so far not agreed, even conditionally, to forgo any future pursuit of fees under Section 1021.11 if one of their regulations is challenged. The Court correctly held that the State's conditional non-enforcement position did not affect the justiciability of *Miller*. This case is necessarily justiciable, too.

The Court's Order in this case suggests that Plaintiffs might lack standing *because of* the *Miller* injunction. *See* Order To Show Cause at 2:13–15, ECF No. 18 (Mar. 14, 2023) ("Plaintiffs . . . have not shown there is an imminent and substantial risk of harm in light of this Court enjoining the State from enforcing Section 1021.11." (cleaned up)). As noted, however, the Defendants here were not defendants in *Miller*. They are not referenced in the *Miller* judgment. And as independent government entities with independent authority to seek fees under Section 1021.11, they lack the necessary privity with the *Miller* defendants to be bound by the *Miller* injunction as non-parties. *See Nat. Res. Def. Council v. U.S. E.P.A.*, 38 F.4th 34, 57 n.18 (9th Cir. 2022). Thus, Plaintiffs still face the threat that these Defendants will seek attorney's

fees under Section 1021.11 if Plaintiffs bring the litigation they intend to bring. Indeed, the Defendants' refusal to abide by the *Miller* injunction speaks to the potency of Section 1021.11 as a litigation deterrent: Despite a federal court order enjoining a statute that even the California Attorney General refused to defend, Defendants are not willing to give up Section 1021.11's protection as a shield that prevents their regulations from being challenged in court.

The Court's Order also suggests that this threat is not actual and imminent because "none of the Defendants here have *affirmatively stated* that they would seek to utilize Section 1021.11 in connection with any pending or threatened lawsuits." Order To Show Cause at 2:18–19 (emphasis added). But standing could only be defeated with affirmative statements of *non-enforcement*. Particularly for "recently enacted" statutes, "courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996); *see also, e.g.*, *Am. Booksellers Ass'n, Inc.*, 484 U.S. at 393 (finding standing in preenforcement challenge when the "State ha[d] not suggested that the newly enacted law will not be enforced"); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979) (finding standing in preenforcement challenge to "criminal penalty provision" that had "not yet been applied and may never be applied" in relevant context because "the State has not disavowed any intention of invoking the criminal penalty provision" in that context); *ARLPAC*, 320 F.3d at 1007 (finding standing in preenforcement challenge when the State had "not suggested that the legislation [would] not be enforced" and the statute had not "fallen into desuetude").

This Court accordingly found standing and ripeness in *Miller* without any affirmative statement of intent to enforce Section 1021.11. To the contrary, the State's Attorney General, unlike any of the Defendants here, committed *not* to seek fees "in connection with any suit filed before the date on which a decision ultimately upholding the constitutionality of section 4 of SB 8 [Section 1021.11's model

provision] is affirmed on appeal (or the time to file an appeal expires)." *Miller* Att'y Gen. Br. at 2:13–15. But even that did not remove the *threat* that existed at the time of filing, before the State took its conditional non-enforcement position, that the State *could* enforce Section 1021.11 against the *Miller* plaintiffs. *See Miller* Justiciability Order at 7:5–7 ("[T]he Defendant Attorney General could leave office and his successor might begin immediate enforcement."). In light of the *Miller* plaintiffs' demonstrated history of bringing constitutional claims and their expressed intent to bring claims subject to Section 1021.11, that threat was "credible," and it therefore satisfied Article III. *Id*. at 3 n.2.

Plaintiffs here have the same history and intent, but no commitment from Defendants not to enforce Section 1021.11's unconstitutional fee-shifting provisions. Instead, before this suit was filed, the City of San Diego took the position that the *Miller* injunction did not "warran[t] an unequivocal waiver from the City," Compl. ¶ 47, ECF No. 1 (Mar. 2, 2023); the County of Alameda asserted that it "lacked any obligation" to stipulate to non-enforcement, *id*., Ex. 4; the County of Los Angeles would only "consider entering a stipulation" on a case-by-case basis, *id*., Ex. 7; the City of San Jose declined "to comment on what positions the City might take, or what remedies it might seek," in future cases, *id*., Ex. 9; and the other Defendants failed to respond to Plaintiffs' request for a non-enforcement commitment. Plaintiffs thus face "a credible threat of enforcement" that renders their claims justiciable under *Miller* and the "longstanding federal precedent" that the Court applied. *Miller* Justiciability Order at 3 n.2; *see also, e.g.*, *Babbitt*, 442 U.S. at 302.

## II.   Venue Is Proper in this District.

Under 28 U.S.C. § 1391(b)(1), a "civil action may be brought in a judicial district in which *any defendant* resides, if all defendants are residents of the State in which the district is located" (emphasis added). The Court did not raise a potential venue issue with the City of San Diego or the County of Imperial, which are both located in this District and which both therefore "reside" in this District. *See*

§ 1391(c)(2) ("For all venue purposes an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]"). All other Defendants are entities located entirely in the State of California. Venue for the claims against those Defendants is therefore proper in this District as well.

### III. All Defendants Are Properly Joined.

Under Rule 20, defendants may be joined in an action if "any right to relief is asserted . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and "any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2). This case raises only a question of law, and that question is common to all Defendants: namely, whether the Federal Constitution permits any Defendant to seek attorneys' fees from any Plaintiffs or Plaintiffs' attorneys under Section 1021.11. The only issue, then, is whether Plaintiffs' claims against each Defendant can be said to arise from the same series of transactions or occurrences. They do, because the series of transactions or occurrences here is the State's enactment of a law that purports to allow the Defendants to unconstitutionally deter the Plaintiffs from exercising their First Amendment rights to access the courts by enforcing Section 1021.11, and, by refusing to disavow enforcement, each of the Defendants is holding the Plaintiffs hostage to the risk that the statute will be enforced against them.

"Instead of developing one generalized test for ascertaining whether a particular factual situation constitutes a . . . series of transactions or occurrences" under Rule 20, "courts have adopted a case-by-case approach." 7 CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 1653 (3d ed.) ("WRIGHT & MILLER"). But "in actions," like this one, "predicated on federal statutes and the United States Constitution," courts frequently "have relied upon Rule 20 to sustain the joinder of

1  defendants." *Id*. § 1657. That includes "civil-rights cases." *Id*. After all, "[t]he purpose
2  of the rule is to promote trial convenience and expedite the final determination of
3  disputes, thereby preventing multiple lawsuits," goals that become only more
4  imperative when fundamental rights are at stake, as they are here. *Id*. § 1652.

5       Thus, in *United States v. Mississippi*, the Supreme Court held that six county
6  registrars, three of whom resided outside the district where the suit was initiated, were
7  properly joined in the action because the complaint alleged "a state-wide system
8  designed to enforce the registration laws in a way that would inevitably deprive"
9  minority citizens of their voting rights—even though the Court cited no allegations
10 that the defendant registrars acted in concert with one another in any particular
11 instance. 380 U.S. 128, 142 (1965). In *Bryant v. California Brewers Association*,
12 where the plaintiff challenged a collective-bargaining agreement for the State's
13 brewery industry on the ground that it deprived him of valuable employment status
14 based on his race, the Ninth Circuit held that breweries where the plaintiff had "neither
15 worked nor sought to work" were properly joined merely because they were
16 "signatories to the statewide collective bargaining agreement and, as such, support
17 and maintain the disputed contract provisions." 585 F.2d 421, 425 (9th Cir. 1978),
18 *vacated on other grounds*, 444 U.S. 598 (1980). More recently in the ERISA context,
19 the Central District held that 422 separate defendants were properly joined even
20 though the claims against them arose from more than 400 separate retirement plans
21 and, as they contended, "from thousands of independent and unique" transactions.
22 *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d
23 1110, 1188 (C.D. Cal. 2015). Recognizing that, "strictly speaking," each claim
24 "implicate[d] a different 'transaction' of sorts," the Court did "not believe the
25 [complaint] should be read so narrowly." *Id*. "Rather, each discrete claim [was] part
26 of the larger systematic behavior alleged" and thus arose "out of the same series of
27 transactions or occurrences." *Id*.
28

These cases illustrate the Supreme Court's observation that, "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Simply put, Rule 20 "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 558 F.2d 914, 917 (9th Cir. 1977); *see also* WRIGHT & MILLER § 1653 ("The transaction and common-question requirements prescribed by Rule 20(a) are not rigid tests. They are flexible concepts used by the courts to implement the purpose of Rule 20 and therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy.").

Joinder is as appropriate here as it was in *Mississippi*, *Bryant*, and *Almont*. The claims in this case are predicated on fundamental civil rights and call for expeditious resolution. This Court recognized as much in *Miller* by consolidating the hearing on the plaintiffs' preliminary-injunction motion with a trial on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2). *See* Minute Order, *Miller*, ECF No. 25 (Nov. 15, 2022). As the cases above show, Rule 20's "flexible" provisions do not require a plaintiff to allege that all defendants acted in concert when rights are deprived systematically and state-wide. WRIGHT & MILLER § 1653. And the claims against all Defendants arise from a single law that is explicitly aimed at firearm owners and advocacy groups throughout the State. As a result, the claims against all Defendants will likely involve "overlapping proof," another widely accepted indication that they "arise out of the same transaction or occurrence." *Id*.

Judicial economy is also served by joining Defendants here for the simple, but important, reason that 88 days after the Plaintiffs began seeking Defendants' agreements not to enforce Section 1021.11, not a single Defendant has raised a single argument in support of the constitutionality of the statute. It bears repeating that in *Miller*, the Attorney General—the state constitutional officer charged with defending

the State's laws—*refused to defend* Section 1021.11. And the Governor's defense of the law in intervention in *Miller* was limited to asserting that, "[w]hile fee-shifting provisions like S.B. 8's," and therefore like Section 1021.11's, "are outrageous and objectionable, no court has yet held that this type of fee-shifting provision is unconstitutional." Intervenor-Def.'s Supp. Br. at 8:18–20, *Miller v. Bonta*, No. 3:22-cv-1446, ECF No. 35 (Dec. 12, 2022). Judicial economy, not to mention fairness, is not served by multiple lawsuits targeting an egregious law that cannot be defended on the merits.

In short, there is no valid reason to impose the "delay, inconvenience, and added expense" of separate actions here. WRIGHT & MILLER § 1653. Plaintiffs will be prejudiced not only by the burden of litigating in multiple courts, but also by the likely delay that this piecemeal approach would cause to the full recognition of their rights. Defendants would be forced to independently address legal questions that they could just as easily, if not more efficiently, address together in this Court. And the courts in other districts will be forced to adjudicate legal questions that this Court has already resolved. Permissive joinder exists under Rule 20 specifically to prevent such an unnecessary multiplicity of suits. *See League to Save Lake Tahoe*, 558 F.2d at 917.

Even if joinder were improper, "[m]isjoinder of parties is not a ground for dismissing an action." FED. R. CIV. P. 21. Rather, "the court may at any time, on just terms, add or drop a party" or "sever any claim against a party." *Id*. At least in cases of misjoined plaintiffs, the Ninth Circuit has said that parties may be severed only if "no substantial right will be prejudiced." *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 871 (9th Cir. 2013) (internal quotation marks omitted). For the reasons above, Plaintiffs' fundamental constitutional rights will be prejudiced by severance here. In any event, a finding of misjoinder could at most justify either dismissing without prejudice the claims against all Defendants other than the City of San Diego and County of Imperial, or severing those other claims and transferring them to the appropriate districts; the cases against the City of San Diego and County of Imperial

would remain properly consolidated in this District under Federal Rule of Civil Procedure 42. But Rule 20 does not require either of these outcomes, which would only prejudice the parties and the courts.

## CONCLUSION

Plaintiffs have standing, their claims are ripe, venue is proper in this District, and all Defendants are properly joined. The Court can and should proceed to resolve Plaintiffs' Motion for Preliminary Injunction or Summary Judgment filed simultaneously with this Response.

Dated: March 28, 2023                    BENBROOK LAW GROUP, PC

By  s/ Bradley A. Benbrook
　　BRADLEY A. BENBROOK
　　Attorneys for Plaintiffs