1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
701 University Avenue, Suite 106
Sacramento, CA 95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

FIREARMS POLICY COALITION, INC.; CALIFORNIA GUN RIGHTS FOUNDATION; SAN DIEGO COUNTY GUN OWNERS PAC,

Plaintiffs,

v.

CITY OF SAN DIEGO; COUNTY OF IMPERIAL; COUNTY OF ALAMEDA; COUNTY OF VENTURA; COUNTY OF LOS ANGELES; CITY OF SAN JOSE; and COUNTY OF SANTA CLARA,

Defendants.

Case No.: 3:23-cv-00400-LL-DDL

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

Date: May 2, 2023
Courtroom 5D (5th Floor)
Hon. Linda Lopez

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................................................ii

I.     INTRODUCTION.........................................................................................1

II.    BACKGROUND............................................................................................2

    A.     Section 1021.11 Creates A State-Law Fee-Shifting Regime, Applicable Only To Firearms Litigation, Designed To Suppress Such Cases And Insulate Firearms Regulations From Judicial Review ...........................2

    B.     Section 1021.11 Violates Several Constitutional Provisions.................3

    C.     Section 1021.11's Fee-Shifting Regime Has Infringed On Plaintiffs' Constitutional Rights By Depriving Them Of Access To Court ...........5

III.   ALTERNATIVE MOTIONS.......................................................................10

IV.    ARGUMENT ...............................................................................................11

    A.     Section 1021.11's Fee-Shifting Regime Is Unconstitutional And Should Be Enjoined As To Defendants For The Same Reasons It Was Enjoined As To The State In *Miller* .....................................................................11

        1.     Section 1021.11's Fee-Shifting Regime Violates the First Amendment ........................................................................11

        2.     Section 1021.11's Fee-Shifting Regime is Preempted by 42 U.S.C. § 1988 ..................................................................15

        3.     Section 1021.11's Fee-Shifting Regime Violates The Equal Protection And Due Process Clauses........................18

    B.     Plaintiffs Will Be Irreparably Harmed Without A Preliminary Injunction .......................................................................................19

    C.     The Balance Of Equities And Public Interest Both Favor Plaintiffs ....20

    D.     The Court Should Waive Bond Or Require Only Nominal Security ...21

    E.     The Court Should Advance The Merits Hearing And Consolidate It With The Preliminary Injunction Pursuant to FRCP 65(a)(2).............22

V.     CONCLUSION ...........................................................................................22

1

# TABLE OF AUTHORITIES

2

**Cases**

3
*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ................................................................. 10

4
*Altria Grp., Inc. v. Good*,
  555 U.S. 70 (2008) ..................................................................................... 15

5

6
*Am. Bev. Ass'n v. City & Cty. of San Francisco*,
  916 F.3d 749 (9th Cir. 2019) .................................................................... 20

7
*Am. Trucking Ass'ns v. City of Los Angeles*,
  559 F.3d 1046 (9th Cir. 2009) ............................................................ 19, 21

8
*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................................. 10

9
*Ariz. Right to Life Political Action Comm. v. Bayless*,
  320 F.3d 1002 (9th Cir. 2003) ................................................................ 8, 9

10

11
*Arizona Dream Act Coal. v. Brewer*,
  757 F.3d 1053 (9th Cir. 2014) .................................................................. 20

12
*Ashcroft v. Am. Civil Liberties Union*,
  542 U.S. 656 (2004) .................................................................................. 10

13
*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979) .................................................................................... 9

14
*Barahona-Gomez v. Reno*,
  167 F.3d 1228 (9th Cir. 1999) .................................................................. 21

15

16
*Bhd. Of R. R. Trainmen v. Virginia ex rel. Va. State Bar*,
  377 U.S. 1 (1964) ...................................................................................... 13

17
*Cal. Motor Trans. Co. v. Trucking Unlimited*,
  404 U.S. 508 (1972) .................................................................................. 12

18
*Cal. Pharmacists Ass'n v. Maxwell-Jolly*,
  563 F.3d 847 (9th Cir. 2009) .................................................................... 21

19

20
*Cayuga Nation v. Tanner*,
  824 F.3d 321 (2d Cir. 2016) ....................................................................... 9

21
*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................ 10, 11

22
*Christiansburg Garment Co. v. EEOC*,
  434 U.S. 412 (1978) .................................................................................. 16

23
*Cmty. House, Inc. v. City of Boise*,
  490 F.3d 1041 (9th Cir. 2007) .................................................................. 20

24

25
*Crosby v. Nat'l Foreign Trade Council*,
  530 U.S. 363 (2000) .................................................................................. 15

26
*Doe v. Harris*,
  772 F.3d 563 (9th Cir. 2014) .................................................................... 20

27
*Drakes Bay Oyster Co. v. Jewell*,
  747 F.3d 1073 (9th Cir. 2014) .................................................................. 20

28

*Elrod v. Burns*,
    427 U.S. 347 (1976) ...................................................................................... 19

*First Nat'l Bank of Bos. v. Bellotti*,
    435 U.S. 765 (1978) ...................................................................................... 14

*Fox v. Vice*,
    563 U.S. 826 (2011) ...................................................................................... 16

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
    505 U.S. 88 (1992) ........................................................................................ 15

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2006) ...................................................................................... 10

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ................................................................................. 16, 18

*Holder v. Humanitarian L. Project*,
    561 U.S. 1(2010) ............................................................................................. 9

*In re Primus*,
    436 U.S. 412 (1978) ................................................................................. 12, 14

*Italian Colors Rest. v. Becerra*,
    878 F.3d 1165 (9th Cir. 2018) ........................................................................ 8

*Kennedy v. Bremerton Sch. Dist.*,
    142 S.Ct. 2407 (2022) ................................................................................... 14

*Legal Services Corp. v. Velazquez*,
    531 U.S. 533 (2001) ................................................................................. 13, 14

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ................................................................... 19, 20

*Miller v. Bonta*, No. 3:22-cv-1446-BEN-MDD,
    --- F.Supp.3d ----, 2022 WL 17811114 (S.D. Cal. Dec. 19, 2022) ............... passim

*Nat'l Ass'n for Advancement of Colored People v. Button*,
    371 U.S. 415 (1963) ........................................................................... 12, 13, 14

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    142 S.Ct. 2111 (2022) ................................................................................... 14

*Newman v. Piggie Park Enters., Inc.*,
    390 U.S. 400 (1968) ...................................................................................... 18

*Nordlinger v. Hahn*,
    505 U.S. 1 (1992) .......................................................................................... 18

*PLIVA, Inc. v. Mensing*,
    564 U.S. 604 (2011) ................................................................................. 15, 18

*Preminger v. Principi*,
    422 F.3d 815 (9th Cir. 2005) ........................................................................ 20

*Rodriguez v. Robbins*,
    715 F.3d 1127 (9th Cir. 2013) ...................................................................... 21

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
    141 S. Ct. 63 (2020) ...................................................................................... 19

*Save Our Sonoran, Inc. v. Flowers*,
    408 F.3d 1113 (9th Cir. 2005) ...................................................................... 21

*Slidewaters LLC v. Wash. State Dep't of Lab. & Indus.*,
  4 F.4th 747 (9th Cir. 2021) ....................................................... 22

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011) ................................................................. 14

*South Bay Rod & Gun Club, Inc. v. Bonta*,
  S.D. Cal. Case No. 3:22-cv-1461-BEN-JLB, 2022 WL 17811113 (S.D. Cal. Dec.
  19, 2022) ................................................................................ 11

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
  809 F.2d 626 (9th Cir. 1987) ..................................................... 11

*Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
  489 U.S. 782 (1989) ................................................................. 16

*Tingley v. Ferguson*,
  47 F.4th 1055 (9th Cir. 2022) ..................................................... 8

*United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*,
  389 U.S. 217 (1967) ................................................................. 13

*United States v. California*,
  921 F.3d 865 (9th Cir. 2019) ..................................................... 21

*United States v. Playboy Ent. Grp., Inc.*,
  529 U.S. 803 (2000) ................................................................. 15

*United States v. Stevens*,
  559 U.S. 460 (2010) ................................................................. 14

*United Transp. Union v. State Bar of Mich.*,
  401 U.S. 576 (1971) ................................................................. 13

*Virginia v. Am. Booksellers Ass'n, Inc.*
  484 U.S. 383 (1988) ................................................................... 9

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ..................................................................... 10

*Zepeda v. U.S. I.N.S.*,
  753 F.2d 719 (9th Cir. 1983) ..................................................... 21

**Statutes**

42 U.S.C. § 1988 ...................................................................... 15

42 U.S.C. § 1988(b) .................................................................. 16

Cal. Code Civ. Proc. § 1021.11 .............................................. passim

**Other Authorities**

Gavin Newsom, Opinion, *The Supreme Court Opened the Door to Legal Vigilantism in Texas. California Will Use the Same Tool To Save Lives.*, Wash. Post (Dec. 20, 2021), https://wapo.st/3wxWoeI .................................................. 4

H.R. Rep. No. 94–1558 (1976) .................................................. 18

Press Release, Cal. Dep't of Just., *Att'y Gen. Bonta: Texas Cannot Avoid Judicial Review of Its Constitutional Abortion Ban* (Oct. 27, 2021), https://bit.ly/3pRWA4F ............................................................ 4

S. Rep. No. 94-1011 (June 29, 1976) ......................................... 18

S.B. 1327, A. Jud. Comm. Analysis (June 10, 2022) ...................... 4

S.B. 1327, S. Floor Analysis (June 28, 2022) ................................................................ 4

**Rules**

Fed. R. Civ. P. 56, advisory comm. notes (2009 Amendments) ............................... 10

Fed. R. Civ. P. 56(a) ...................................................................................................... 10

Fed. R. Civ. P. 65(a)(2) ........................................................................................... 10, 22

Fed. R. Civ. P. 65(c) ...................................................................................................... 21

1

## I.  INTRODUCTION

2      In *Miller v. Bonta*, this Court enjoined the State from enforcing California Code

3 of Civil Procedure Section 1021.11, a one-sided fee-shifting provision that punishes

4 firearms litigants and their attorneys for asserting constitutional claims, and held that

5 the statute was unconstitutional on multiple fronts. No. 3:22-cv-1446-BEN-MDD, ---

6 F.Supp.3d ----, 2022 WL 17811114 (S.D. Cal. Dec. 19, 2022). Because the Defendant

7 local jurisdictions were not defendants in *Miller*, they are not directly bound by the

8 injunction and could invoke Section 1021.11 against parties who challenge municipal

9 firearms regulations. Plaintiffs are organizations that, but for the risk of ruinous fee

10 liability under Section 1021.11, would challenge firearms regulations in the Defendant

11 jurisdictions. Before filing this case, Plaintiffs requested that Defendants stipulate to

12 non-enforcement of Section 1021.11 in light of *Miller*, but Defendants have refused

13 to do so. As a result, Plaintiffs have refrained from challenging Defendants' firearms

14 regulations until this Court removes the cloud hanging over those claims by virtue of

15 Section 1021.11's operation.

16      As this Court has recognized, Section 1021.11 is an unconstitutional attempt by

17 the State of California to deter citizens and firearms advocacy groups—through a

18 novel, one-way fee-shifting penalty—from accessing the courts to litigate claims over

19 firearms regulations. In *Miller*, the Court held that Section 1021.11 violated the First

20 Amendment (2022 WL 17811114 at *2–4); the Supremacy Clause (*id.* at *4–7); and

21 noted that it likewise ran afoul of the Due Process and Equal Protection Clauses (see

22 *id.* at *2–3). "A state law that threatens its citizens for questioning the legitimacy of

23 its firearms regulations may be familiar to autocratic and tyrannical governments, but

24 not American government. American law counsels vigilance and suspiciousness of

25 laws that thwart judicial scrutiny." *Id.* at *3. Because "the purpose and effect of

26 § 1021.11 is to trench on a citizen's right of access to the courts and to discourage the

27 peaceful vindication of an enumerated constitutional right," the Court declared the

28 statute invalid. *Id.* at *4.

Section 1021.11's enforcement is unconstitutional, regardless of whether the State or these local-government Defendants seek to enforce it. This suit was filed on March 2, 2023, and every Defendant was served with the summons on March 3. But Defendants still have not disavowed an intent to enforce the law. Instead, Defendants appear poised to defend Section 1021.11's constitutionality, or at least benefit from the deterrent effect of having it remain in place. Injunctive relief is therefore necessary to secure Plaintiffs' rights.

Since this case presents only questions of law, there is no need for discovery or further development of the case. This Court should take expeditious action and enter judgment in Plaintiffs' favor. Defendants should be enjoined from enforcing this unconstitutional statute.

## II.  BACKGROUND

### A.    Section 1021.11 Creates A State-Law Fee-Shifting Regime, Applicable Only To Firearms Litigation, Designed To Suppress Such Cases And Insulate Firearms Regulations From Judicial Review.

Senate Bill 1327, enacted as Code of Civil Procedure § 1021.11, is based largely word-for-word on Texas's SB 8, enacted in 2021 in the abortion context. *See Miller*, 2022 WL 17811114, at *1. This case challenges Section 1021.11's radical effort to suppress firearms-related litigation by putting civil rights litigants and their attorneys on the hook for the government's attorney's fees if a case results in anything short of victory on every claim alleged in a complaint.[1] Section 1021.1l provides, in relevant part:

> Notwithstanding any other law, any person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief to prevent this state, a political subdivision, a governmental entity or public official in this state, or a person in this state from enforcing any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts firearms, or that represents any litigant seeking

---

[1]    Senate Bill 1327 also created a private right of action to enforce state laws relating to the unlawful manufacture, distribution, or sale of specified firearms. 2022 Cal. Stat. ch. 146, § 1 (adding Bus. & Prof. Code §§ 22949.60–.71). This case does not challenge SB 1327's private attorney general features.

that relief, is jointly and severally liable to pay the attorney's fees and costs of the prevailing party.

Cal. Code Civ. Proc. § 1021.11(a).

Unlike any other ordinary "fee shifting" statute, Section 1021.11 says that a "prevailing party" *cannot be a plaintiff* who brings a case seeking declaratory or injunctive relief regarding a state or local firearm regulation. Code Civ. Proc. § 1021.11(e). And it says that a government defendant in a firearms case, including a local-government defendant, will be treated as a "prevailing party" if the court either "[d]ismisses *any* claim or cause of action" in the case, "regardless of the reason for the dismissal," or "[e]nters judgment in favor of the [government] party" "on any claim or cause of action." Code Civ. Proc. § 1021.11(b) (emphasis added). In simple terms, then, Section 1021.11 would enable government defendants to recover fees if a firearms plaintiff loses *on any claim* in the case, while the plaintiff can only avoid liability for fees if it prevails on *every claim* in the case. This means, among other things, that a plaintiff could be liable for the government's fees even if the plaintiff obtained all of the relief sought in the litigation—for example, if the plaintiff obtained declaratory and injunctive relief on a Second Amendment claim but the plaintiff's Equal Protection claim was thereafter dismissed as moot.

Section 1021.11(c) further gives these "prevailing party" government defendants a three-year window to bring a state law action to recover their fees, notwithstanding that the vast majority of firearms litigation is brought under 42 U.S.C. § 1983 and federal law already provides for the treatment of attorney's fees in those cases: 42 U.S.C. § 1988(b) provides that "prevailing part[ies]" in federal civil rights actions may recover "a reasonable attorney's fee as part of [their] costs" in the underlying action itself.

**B.    Section 1021.11 Violates Several Constitutional Provisions.**

Despite signing SB 1327 into law, Governor Newsom blasted the Supreme Court's refusal to block SB 8, the Texas law on which SB 1327 was based, as

"outrageous" and "an abomination." Gavin Newsom, Opinion, *The Supreme Court Opened the Door to Legal Vigilantism in Texas. California Will Use the Same Tool To Save Lives.*, Wash. Post (Dec. 20, 2021), https://wapo.st/3wxWoeI. Attorney General Rob Bonta has likewise described SB 8 as "blatantly unconstitutional." Press Release, Cal. Dep't of Just., *Att'y Gen. Bonta: Texas Cannot Avoid Judicial Review of Its Constitutional Abortion Ban* (Oct. 27, 2021), https://bit.ly/3pRWA4F. And SB 1327's legislative history includes similar acknowledgements. *See* S.B. 1327, S. Floor Analysis, p. 6 (June 28, 2022) ("While the goal of repurposing the Texas law may be sound, these problematic provisions may not justify those ends. They insulate government action from meaningful challenge by creating a strong, punitive deterrent for any that try and in the end, may violate due process guarantees."); S.B. 1327, A. Jud. Comm. Analysis, p. 13 (June 10, 2022) (describing SB 1327's fee-shifitng as "a lose-lose scenario for plaintiffs who challenge the bill or a gun law; and a win-win scenario for the government").

Thus, the constitutionality of Section 1021.11—which was enacted to target firearms litigation as a form of protest over Texas's SB 8—has never been in serious dispute. Indeed, the Attorney General declined to defend the law in *Miller*. *See* 2022 WL 17811114, at *1. And though the Governor intervened to litigate the law's constitutionality on the merits, his defense amounted to the assertion that, "[w]hile fee-shifting provisions like S.B. 8's," and therefore like Section 1021.11's, "are outrageous and objectionable, no court has yet held that this type of fee-shifting provision is unconstitutional." Intervenor-Def.'s Supp. Br. at 8:18–20, *Miller v. Bonta*, No. 3:22-cv-1446, ECF No. 35 (Dec. 12, 2022).

That is no longer the case. In *Miller*, this Court held that Section 1021.11 violates the First Amendment, the Supremacy Clause, the Equal Protection Clause, and the Due Process Clause. The Court's reasoning will be discussed throughout this brief. But the crux is as follows: "The principal defect of § 1021.11 is that it threatens to financially punish plaintiffs and their attorneys who seek judicial review of laws

impinging on federal constitutional rights. Today, it applies to Second Amendment rights. Tomorrow, with a slight amendment, it could be any other constitutional right[.]" *Miller*, 2022 WL 17811114, at *2.

## C.   Section 1021.11's Fee-Shifting Regime Has Infringed On Plaintiffs' Constitutional Rights By Depriving Them Of Access To Court.

As detailed in *Miller*, Section 1021.11 unconstitutionally chilled Plaintiffs' ability to bring and continue to prosecute civil rights cases challenging California firearm regulations. Section 1021.11 also purports to allow local jurisdictions to enforce its onerous terms when they are sued in challenges to their firearm regulations. Plaintiffs here are prepared to sue each of the Defendants for local regulations that violate the Second Amendment. But Defendants were not parties to *Miller*, so they are not directly bound by its injunction.

After the *Miller* ruling, Plaintiffs FPC and CGF asked Defendants to stipulate that they would not enforce Section 10211.11, either in a current case or a case that Plaintiffs intend to file. Each Defendant refused, either affirmatively or by declining to respond. This resistance is indefensible in light of the *Miller* ruling enjoining the law as to the State of California.

Specifically, Defendants responded as follows:

*City of San Diego*. Counsel for the plaintiffs (which include FPC and SDCGO) in the pending case of *Fahr v. City of San Diego*, S.D. Cal. Case No. 3:21-cv-01676-BAS-BGS, sent a letter to the San Diego City Attorney asking that it stipulate not to enforce Section 1021.11 against the plaintiffs or their attorneys and law firms based on the outcome of the case. The City Attorney's office responded that "the City is not in a position to stipulate as requested," and that it did "not believe" that the Court's decision in *Miller* "warrants an unequivocal waiver from the City." DiGuiseppte Decl., ¶¶ 2–4 & Ex. 1. As a result, FPC and SDCGO are forced to continue litigating under the threat of Section 1021.11 fee liability. The uncertainty about potential enforcement has created a chilling effect on the *Fahr* Plaintiffs' (and their counsel's)

ability to proceed with the case. DiGuiseppe Decl., ¶¶ 5–6; Combs Decl., ¶ 8; Schwartz Decl., ¶ 5.

*County of Imperial*. Counsel for FPC and CGF sent a letter to the Office of the County Counsel for the County of Imperial asking that it stipulate not to enforce Section 1021.11 against the intended plaintiffs or their attorneys and law firms in a case they intend to file challenging the constitutionality of a county ordinance prohibiting the possession of firearms in any recreational park within the county's jurisdiction. Imperial County did not respond. Benbrook Decl., ¶ 4 & Ex. 2.

*County of Alameda*. Counsel for FPC and CGF sent a letter to the Office of the County Counsel for the County of Alameda asking that it stipulate not to enforce Section 1021.11 against the intended plaintiffs or their attorneys and law firms in a case they intend to file challenging the constitutionality of the Alameda County Sherriff's Office's application and enforcement of the County's licensing regime for carrying concealed firearms. Lee Decl., ¶ 3 & Ex. 4.

Alameda County Counsel responded by letter that it would not agree to non-enforcement. The County further suggested (baselessly) that Plaintiffs' counsel were in potential breach of ethical obligations and "encouraged" counsel to "be mindful of your duties obligations [sic] before you make averments in any pleading regarding the intentions of the Sheriff and the County" regarding Section 1021.11, because claims against them purportedly "do not exist and would not be ripe despite your attempts to manufacture a claim." Lee Decl., ¶ 3 & Ex. 4.

*County of Ventura*. FPC and CGF sent a letter to the Office of the County Counsel for the County of Ventura asking that it stipulate not to enforce Section 1021.11 against the intended plaintiffs or their attorneys and law firms in a case they intend to file challenging the constitutionality of the Ventura County Sheriff's Office's application and enforcement of the County's licensing regime for carrying concealed firearms. Ventura County did not respond. Benbrook Decl., ¶ 5 & Ex. 5.

*County of Los Angeles*. Counsel for FPC and CGF sent a letter to the Office of the County Counsel for the County of Los Angeles asking that it stipulate not to enforce Section 1021.11 against the intended plaintiffs or their attorneys and law firms in a case they intend to file challenging the constitutionality of (1) the Los Angeles County Sherriff's Office's application and enforcement of the County's licensing regime for carrying concealed firearms; and (2) a provision of the county code prohibiting the possession of firearms in any public park within the county's jurisdiction. County Counsel responded by letter that it would not agree to non-enforcement, but that it "would be willing to discuss entereing into a case-specific situation." Benbrook Decl., ¶ 6 & Exs. 6, 7.

*City of San Jose*. Counsel for FPC and CGF sent a letter to counsel for the City of San Jose asking that the city stipulate not to enforce Section 1021.11 against the intended plaintiffs or their attorneys and law firms in a case they intend to re-file challenging the constitutionality of city ordinances requiring firearm owners to pay an annual fee to a City-designated non-profit organization and obtain firearm-related insurance. FPC had previously sued to invalidate those same regulations, but dismissed the lawsuit in August 2022 because of the threat posed by Section 1021.11. *Glass v. City of San Jose*, N.D. Cal. Case No 5:22-cv-02533-BL. FPC is prepared to re-file this challenge against San Jose once San Jose is enjoined from attempting to enforce Section 1021.11. Benbrook Decl., ¶ 7 & Ex. 8; Combs Decl., ¶ 13; Hoffman Decl., ¶ 10.

Counsel for San Jose responded by letter that it would not agree to non-enforcement, claiming that it was "inappropriate to respond" outside of the context of an actual lawsuit. Benbrook Decl., ¶ 7 & Ex. 9. Counsel "decline[d] to comment on what positions the City might take, or what remedies it might seek, in hypothetical future litigation against the City." Furthermore, counsel for San Jose claimed it was "impossible to know what specific City laws [the Plaintiffs] intend to file a lawsuit over," *id*., despite being advised that Plaintiffs "are now prepared to re-file litigation

seeking declaratory and injunctive relief as to at least the[] same regulations" at issue in the *Glass* litigation. And counsel for San Jose accused Plaintiffs of sending the letter to gain "some advantage in [their] ongoing lawsuit" in the *Miller* case, despite the fact that the *Miller* court had already entered a permanent injunction forty-five days earlier. *Id.*

*Santa Clara County.* Counsel for FPC and CGF sent a letter to the Office of the County Counsel for the County of Santa Clara asking that it stipulate not to enforce Section 1021.11 against the intended plaintiffs or their attorneys and law firms in a case they intend to file challenging the constitutionality of the Santa Clara County Sheriff's Office's application and enforcement of the County's licensing regime for carrying concealed firearms. Santa Clara County has not responded. Benbrook Decl., ¶ 8 & Ex. 10.

But for Section 1021.11's fee-shifting provisions, Plaintiffs would forthwith engage in the litigation outlined above, but they have refrained from bringing these suits against Defendants due to the law's threat of ruinous fee liability. Combs Decl., ¶¶ 5–16; Hoffman Decl., ¶¶ 3–12; Schwartz Decl., ¶¶ 4–7. Plaintiffs thus suffer a classic First Amendment injury: they wish to engage in conduct protected by the First Amendment but within Section 1021.11's reach, and their constitutional rights to engage in that conduct have been chilled by the statute. *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1171–73 (9th Cir. 2018) (detailing standard for preenforcement challenge based on chilled First Amendment activity); *Tingley v. Ferguson*, 47 F.4th 1055, 1066–67 (9th Cir. 2022) ("unique standing considerations in the First Amendment context," where "the Supreme Court has dispensed with rigid standing requirements" and where chilled conduct is "a constitutionally sufficient injury," "tilt dramatically" in favor of pre-enforcement standing) (cleaned up). Plaintiffs' injury is akin to self-censorship—they have suffered injury by being "forced to modify [their] speech and behavior to comply with the statute." *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) ("*ARLPAC*"). Such "self-

censorship" is a sufficient injury under Article III "even without an actual prosecution." *Virginia v. Am. Booksellers Ass'n, Inc.* 484 U.S. 383, 393 (1988); *see also ARLPAC*, 320 F.3d at 1007 n.6 (fact that Plaintiffs have "suffered actual harm dispenses with any ripeness concerns).

Indeed, Defendants' uniform refusal to abide by the *Miller* ruling confirms why relief is necessary in this case. Plaintiffs filed this lawsuit on March 2, 2023. Each Defendant was served with the summons and complaint the next day. ECF Nos. 7–13. To date, no Defendant has disavowed an intent to enforce Section 1021.11 against Plaintiffs. Benbrook Decl., ¶ 9. It must therefore be presumed that Defendants will enforce the statute if Plaintiffs file the intended lawsuits and fail to prevail on every claim. *Cf. Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) ("Courts are generally 'willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund.'") (citation omitted). Indeed, the Supreme Court has consistently held that preenforcement First Amendment challenges are justiciable when the government retains the threat to enforce an allegedly unconstitutional statute. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979) (finding preenforcement First Amendment challenge justiciable despite argument that statute "has not yet been applied and may never be applied" because of the potential for enforcement); *Virginia v. Am. Booksellers Ass'n, Inc.*, *supra*, 484 U.S. at 393 (permitting preenforcement First Amendment challenge where "[t]he State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise"); *Holder v. Humanitarian L. Project*, 561 U.S. 1, 16 (2010) (allowing preenforcement First Amendment challenge and noting "[t]he Government has not argued to this Court that plaintiffs will not be prosecuted if they do what they say they wish to do"). This threat forced Plaintiffs to file a second lawsuit to obtain the same relief against the local-government Defendants that they obtained against State defendants in *Miller*.

### III. ALTERNATIVE MOTIONS

Plaintiffs move for a preliminary injunction with an expedited trial on the merits or, alternatively, for summary judgment.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction, but a court may employ a "sliding scale" approach in weighing the four factors. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). "[T]he burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). So where, as here, the non-moving party bears the burden of persuasion at trial, the moving party "must be deemed likely to prevail" if the non-movant fails to make an adequate showing. *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 666 (2004). If the Court treats the motion as a motion for preliminary injunction, Plaintiffs request that the Court advance the trial on the merits and consolidate it with the preliminary injunction hearing. *See* Fed. R. Civ. P. 65(a)(2).

Alternatively, Plaintiffs are entitled to summary judgment under Federal Rule of Civil Procedure 56, which "allows a party to move for summary judgment at any time, even as early as the commencement of the action." Fed. R. Civ. P. 56, advisory comm. notes (2009 Amendments). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

626, 630 (9th Cir. 1987). Where the party moving for summary judgment does not bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. Treating this motion as a motion for summary judgment is appropriate because the case presents purely legal issues that this Court has already decided, and there will be no genuine disputes of material fact.

## IV.  ARGUMENT

### A.    Section 1021.11's Fee-Shifting Regime Is Unconstitutional And Should Be Enjoined As To Defendants For The Same Reasons It Was Enjoined As To The State In *Miller.*

The State is now enjoined from enforcing Section 1021.11 under *Miller v. Bonta.* 2022 WL 17811114 (S.D. Cal. Dec. 19, 2022).[2] The Court in *Miller* found that Section 1021.11 violates the First Amendment, is pre-empted under the Supremacy Clause by 42 U.S.C. § 1988, and runs afoul of the Equal Protection and Due Process Clauses. For the same reasons, these local government Defendants should be enjoined from enforcing Section 1021.11.

### 1.    Section 1021.11's Fee-Shifting Regime Violates the First Amendment.

Section 1021.11 encourages state and local governments to push the constitutional envelope when crafting firearms regulations by threatening would-be plaintiffs who might challenge those regulations with a potentially ruinous fee award. As the Court observed in *Miller*, "[t]he principal defect of § 1021.11 is that it threatens to financially punish plaintiffs and their attorneys who seek judicial review of laws impinging on federal constitutional rights." 2022 WL 17811114 at *2. "Laws like § 1021.11 that exact an unaffordable price to be heard in a court of law are

---

[2]    The Court issued a substantively identical ruling in a related case. *South Bay Rod & Gun Club, Inc. v. Bonta,* S.D. Cal. Case No. 3:22-cv-1461-BEN-JLB, 2022 WL 17811113 (S.D. Cal. Dec. 19, 2022).

1   intolerable." *Id.* at *3. And the threat posed by Section 1021.11 extends beyond
2   imposing financial ruin on would-be plaintiffs: the law imposes the same threat of fee
3   liability on plaintiffs' attorneys and their law firms. The *Miller* Court recognized that
4   this scheme "does a disservice to the courts" through suppressing "novel,"
5   "substantial" claims, thereby "threaten[ing] severe impairment of the judicial
6   function" by "insulat[ing] the Government's laws from judicial inquiry." *Id.* at *4
7   (citations omitted).

8       Section 1021.11 thus improperly threatens the right of access to the courts. The
9   right to petition the government for redress of grievances includes "[t]he right of
10  access to the courts," which "is indeed but one aspect of the right of petition." *Cal.*
11  *Motor Trans. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). The *Miller* Court
12  noted that Section 1021.11 struck at the core of this right. "In our ordered system of
13  civil justice, the Second Amendment right, and for that matter all constitutional rights,
14  are ultimately protected by the First Amendment right to identify unconstitutional
15  infringements and seek relief from the courts." 2022 WL 17811114 at *2. And the
16  Court further emphasized "that maintaining the courts as a setting to resolve questions
17  about defective laws is necessary for a peaceful society." *Id.*

18      This isn't the first time a state has erected and enforced regulatory barriers to
19  avoid civil rights litigation. The Supreme Court rejected Virginia's attempt to keep
20  the NAACP out of court in *Nat'l Ass'n for Advancement of Colored People v. Button*,
21  371 U.S. 415 (1963) (concerning the state's ban against the "improper solicitation" of
22  legal business), and struck down South Carolina's efforts to punish the ACLU's
23  counsel in *In re Primus*, 436 U.S. 412 (1978) (concerning the state's prohibition
24  against solicitation of prospective litigants).

25      The Supreme Court has recognized the central role the First Amendment plays
26  in securing access to the courts to preserve civil rights, particularly for groups unable
27  protect their rights through the political channels. "Groups which find themselves
28  unable to achieve their objectives through the ballot frequently turn to the courts. . . .

1  [U]nder the conditions of modern government, litigation may well be the sole
2  practicable avenue open to a minority to petition for redress of grievances." *Button*,
3  371 U.S. at 429–30. Such is the case here, where Plaintiffs seek to assert their
4  constitutional rights in litigation against local governments that disfavor Second
5  Amendment rights.

6      Since *Button*, the Supreme Court has consistently enjoined state action that
7  imposes barriers on litigation that may chill protected activity. *See, e.g., Bhd. Of R. R.*
8  *Trainmen v. Virginia ex rel. Va. State Bar*, 377 U.S. 1, 7 (1964) (a state cannot
9  "handicap[]" "[t]he right to petition the courts" through indirect regulation that
10 "infringe[s] in any way the right of individuals and the public to be fairly represented
11 in lawsuits authorized by Congress to effectuate a basic public interest"); *United Mine*
12 *Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222–23 (1967) (the
13 state cannot "erode [the First Amendment's] guarantees by indirect restraints" on
14 citizens' ability to assert their legal rights); *United Transp. Union v. State Bar of*
15 *Mich.*, 401 U.S. 576, 580–81, 585–86 (1971) (explaining that "the First Amendment
16 forbids . . . restraints" that effectively prevent groups from "unit[ing] to assert their
17 legal rights," and striking down economic regulation that denied union members
18 "meaningful access to the courts").

19     Because "[t]he Constitution does not permit" the government to "insulate [its]
20 interpretation of the Constitution from judicial challenge," courts "must be vigilant
21 when [the government] imposes rules and conditions which in effect insulate its own
22 laws from legitimate judicial challenge." *Legal Services Corp. v. Velazquez*, 531 U.S.
23 533, 548–49 (2001). Section 1021.11's obvious and impermissible purpose is to give
24 state and local governments in California a free hand to regulate firearms by
25 suppressing litigation over firearm regulations, in violation of decades of First
26 Amendment precedent.

27     Section 1021.11's fee-shifting regime further violates the First Amendment
28 because it is content-based and viewpoint-discriminatory. Section 1021.11 imposes a

unique burden on those who seek to vindicate their civil rights through firearms litigation while favoring all other sorts of constitutional and statutory civil rights claims, which are not subject to the same one-sided fee-shifting regime. Civil rights litigation is core protected speech. *See Button*, 436 U.S. at 431 (civil rights litigation is a "form of political expression"); *Primus*, 436 U.S. at 429; *Velazquez*, 531 U.S. at 545. Yet Section 1021.11 singles out such speech over firearms restrictions for special unfavorable treatment. Laws that impose special burdens on disfavored speech and single out disfavored speakers are constitutionally suspect. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564–66 (2011). States are not permitted to advance their policy goals "through the indirect means of restraining certain speech by certain speakers," *id.* at 577, and "may not burden the speech of others in order to tilt public debate in a preferred direction." *Id.* at 578–79. Indeed, "the First Amendment is plainly offended" when the government "attempt[s] to give one side of a debatable public question an advantage in expressing its views to the people." *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 785–86 (1978).

There is also no legitimate historical precedent for a fee-shifting statute that only allows government defendants to recover fees in civil rights litigation. Section 1021.11 thus falls outside of the history and tradition of the First Amendment that is the touchstone of First Amendment analysis. *See, e.g., United States v. Stevens*, 559 U.S. 460, 468–71 (2010) (placing the burden on the government to show that a type of speech belongs to one of the "historic and traditional categories" of constitutionally unprotected speech); *accord Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 2428 (2022) (Establishment Clause analysis must be anchored to "historical practices and understandings"); *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111, 2130 (2022) ("[T]o carry [its] burden, the government must generally point to *historical* evidence about the reach of the First Amendment's protections.") (emphasis in original). The lack of historical precedent further demonstrates that SB 1327 violates the First Amendment.

1   But even under First Amendment balancing tests, Section 1021.11 cannot

2   withstand the appropriate strict scrutiny. Defendants cannot possibly sustain their

3   burden of identifying a compelling interest, because it is impossible to imagine any

4   interest the Defendants could assert as compelling, or even permissible, in support of

5   this statute. There is no compelling interest for targeting a particular type of civil rights

6   litigant for unfavorable treatment when exercising the fundamental right to assert

7   constitutional claims. Moreover, Section 1021.11 is not narrowly tailored: the State

8   failed even to consider less restrictive alternatives that would serve such a purported

9   interest without imposing such severe burdens on core protected rights. *United States*

10  *v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000).

11  In short, and as this Court has already found, Section 1021.11's fee-shifting

12  penalty violates the First Amendment.

13  **2.    Section 1021.11's Fee-Shifting Regime is Preempted by 42 U.S.C.**

14  **§ 1988.**

15  The Supremacy Clause provides that federal law "shall be the supreme Law of

16  the Land." U.S. Const. Art. VI, Cl. 2. "Consistent with that command, [the Supreme

17  Court has] long recognized that state laws that conflict with federal law are without

18  effect." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (citation omitted). To that

19  end, "state law is naturally preempted to the extent of any conflict with a federal

20  statute," *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000), and

21  "[w]here state and federal law 'directly conflict,' state law must give way." *PLIVA,*

22  *Inc. v. Mensing*, 564 U.S. 604, 617 (2011) (citation omitted); *see also Gade v. Nat'l*

23  *Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992) ("[U]nder the Supremacy Clause

24  . . . any state law, however clearly within a State's acknowledged power, which

25  interferes with or is contrary to federal law, must yield.") (internal quotation marks

26  and citation omitted).

27  Section 1021.11's attempt to shift the government's fees onto the shoulders of

28  civil rights plaintiffs conflicts with the text and structure of Section 1988, and it

strongly undermines Section 1988's purposes. Section 1988 provides that, in most categories of federal civil rights litigation, the court "may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" of the case. 42 U.S.C. § 1988(b). "[A] prevailing *plaintiff* 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citation omitted and emphasis added). By contrast, the Supreme Court has repeatedly held that, given the purposes of Section 1988, prevailing *defendants* may recover fees only "where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." *Id*. at 429 n.2; *see Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978) (under analogous fee award language in Title VII, establishing standard that "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless").

Section 1988 does not require a plaintiff to win every claim in order to be a "prevailing party." Relying on congressional guidance, the Supreme Court has "made clear that plaintiffs may receive fees under [Section] 1988 even if they are not victorious on every claim. A civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes." *Fox v. Vice*, 563 U.S. 826, 834 (2011); *see Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793 (1989) (Section 1988 fees are appropriate if a party has "prevailed on a significant issue in the litigation and have obtained some of the relief they sought").

Section 1021.11(e), however, says that only government defendants can be "prevailing parties." And because it also says a government defendant is a "prevailing party" if the plaintiff loses on any of its claims, the government would be entitled to fees even where it has been found to violate the Constitution on other claims in the case. In other words, Section 1021.11 flips Section 1988, putting government defendants in a similar if not better position than plaintiffs under Section 1988.

Section 1021.11 thus directly conflicts with Section 1988 by establishing a wholly separate state law fee regime. Indeed, Section 1021.11 asserts *reverse supremacy* over federal law. The statute remarkably asserts that its fee-shifting provision applies regardless of what any federal court does in an underlying Section 1983 case: Section 1021.11 pronounces that government officials may plow ahead with enforcing the fee-shifting penalty against a Section 1983 plaintiff with a state court collection action even when "*[t]he court in the underlying action held that any provision of this section is invalid, unconstitutional, or preempted by federal law*, notwithstanding the doctrines of issue or claim preclusion." Code Civ. Proc. § 1021.11(d)(3) (emphasis added). As the *Miller* Court observed, "[t]hrough its unfair legal stratagems, the state law chills the First Amendment right to petition government for the redress of grievances, which, in turn, chills the Second Amendment right. The chill is deepened by the extraordinary provision that declares a plaintiff shall not be a prevailing party. In the end, this state statute undercuts and attempts to nullify 42 U.S.C. § 1988." 2022 WL 17811114 at *4. Not only does "California's fee shifting provision turns [the federal] approach upside down," but "California attorney's fee-shifting construct goes beyond § 1988 by discouraging attorneys from representing civil rights plaintiffs." *Id.* at *6. And because Section 1021.11 "will have the effect of thwarting federal court orders enforcing Second Amendment rights through § 1988 attorney's fee awards," the statute "cannot survive." *Id.* at *7.

Section 1021.11 also undermines the manifest purpose of Section 1988. Shortly after the Civil Rights Act's passage, the Supreme Court recognized the link between fee-shifting and effective enforcement of civil rights laws. "When the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law. . . . If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Congress therefore

enacted the provision for counsel fees . . . to encourage individuals injured by racial discrimination to seek judicial relief . . . ." *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401–02 (1968).

In short, "[t]he purpose of [Section] 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley*, 461 U.S. at 429 (quoting H.R. Rep. No. 94–1558 at 1 (1976)); *see also* S. Rep. No. 94-1011 at 2 (June 29, 1976) (explaining that the federal "civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies" embodied in those laws).

In direct conflict with Section 1988's purpose, Section 1021.11 threatens to bankrupt any plaintiff considering a challenge to a state or local firearm regulation if the plaintiff does not achieve complete victory in the litigation. This is a heavy-handed deterrent to asserting civil rights claims, whereas Section 1988 expresses Congressional intent to *encourage* civil rights litigation.

Because Section 1021.11 "stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress," California's law "must give way." *PLIVA, Inc.*, 564 U.S. 634, 617. As this Court again has already found, Section 1021.11's fee-shifting penalty is preempted and its application is unconstitutional under the Supremacy Clause.

### 3. Section 1021.11's Fee-Shifting Regime Violates The Equal Protection And Due Process Clauses.

A law also cannot baselessly discriminate the exercise of a constitutional right without violating the Equal Protection Clause. *See, e.g.*, *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). In all the ways described above, Section 1021.11 discriminates against federal constitutional rights, against gun rights plaintiffs in particular, and on the basis of viewpoint. As this Court held in *Miller*, therefore, Section 1021.11 also violates the Equal Protection Clause. Indeed, while such discrimination against those who seek to

exercise First and Second Amendment rights would be subject to, and plainly fail, strict scrutiny, the classifications at issue here could not even survive rational basis scrutiny as explained above. "Where money determines not merely 'the kind of trial a man gets,' but whether he gets into court at all," the *Miller* Court explained, "the great principle of equal protection becomes a mockery." 2022 WL 17811114 at *3 (citation omitted).

The *Miller* Court further explained that due process separately "requires that a citizen be able to be heard in court" and thus that, "[w]here the financial cost is too high to enable a person to access the courts," there is also a violation of the Due Process Clause. *Id*. at *2. Simply put, "[l]aws like § 1021.11 that exact an unaffordable price to be heard in a court of law are intolerable." *Id*. at *3.

\*    \*    \*

Section 1021.11 is unconstitutional, and its lingering threat of enforcement by the named Defendants is actively infringing on Plaintiffs' right to access the courts.

**B.      Plaintiffs Will Be Irreparably Harmed Without A Preliminary Injunction.**

Plaintiffs are irreparably harmed by Section 1021.11, which imposes a severe burden on their right of access to the courts and deprives them of the full opportunity to vindicate their Second Amendment rights. As the Ninth Circuit has repeatedly emphasized, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam) ("the loss of First Amendment freedoms, for even minimal periods of time, 'unquestionably constitutes irreparable injury.'") (citation omitted). Because "constitutional violations cannot be adequately remedied through damages [such violations] therefore generally constitute irreparable harm." *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1059 (9th Cir. 2009) (citation omitted).

The constitutional violations manifested in Section 1021.11 have caused concrete harm to Plaintiffs here. Section 1021.11 imposes a substantial potential cost on Plaintiffs and has consequently caused Plaintiffs to dismiss or refrain from bringing lawsuits challenging Defendants' firearms regulations that they believe are unconstitutional. Combs Decl., ¶¶ 7–16; Hoffman Decl., ¶¶ 5–12; DiGuiseppe Decl., ¶¶ 3–6; Lee Decl., ¶¶ 3–4; Schwartz Decl., ¶¶ 6–7. Plaintiffs are thus unable to exercise their First Amendment rights to assert Second Amendment rights in court. These significant and ongoing injuries far exceed the Ninth Circuit's baseline for establishing irreparable harm in a constitutional context. *See Am. Bev. Ass'n v. City & Cty. of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) ("Because Plaintiffs have a colorable First Amendment claim, they have demonstrated that they likely will suffer irreparable harm if the Ordinance takes effect.") (citing *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014)); *accord Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007).

## C.      The Balance Of Equities And Public Interest Both Favor Plaintiffs.

When the government is a party, the balance-of-equities and public-interest factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). And by establishing a likelihood that Section 1021.11 violates the Constitution, Plaintiffs have "also established that both the public interest and the balance of the equities favor a preliminary injunction." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014). This is because "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (citation omitted); *accord Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). The balance tips overwhelmingly in Plaintiffs' favor given the significant First Amendment interests at stake. *See Am. Bev. Ass'n*, 916 F.3d at 758 ("[T]he fact that [Plaintiffs] have raised serious First Amendment questions compels a finding that . . .

the balance of hardships tips sharply in [Plaintiffs'] favor," and "we have consistently recognized the significant public interest in upholding First Amendment principles.") (internal quotation marks and citations omitted). Likewise, as the Ninth Circuit has put it, "it is clear that it would not be equitable or in the public's interest to allow" violations of "the requirements of federal law, especially when there are no adequate remedies available. . . . In such circumstances, the interest of preserving the Supremacy Clause is paramount." *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 853 (9th Cir. 2009), reiterated in *United States v. California*, 921 F.3d 865, 893–94 (9th Cir. 2019); *see also Am. Trucking Ass'ns*, 559 F.3d at 1059–60 (determining that the balance of equities and the public interest weighed in favor of enjoining a likely preempted ordinance).

Conversely, the government "cannot suffer harm from an injunction that merely ends an unlawful practice . . . ." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *see also Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) (the state "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations"). The public interest is unquestionably served by preserving access to the courts for Plaintiffs who seek to vindicate their constitutional rights, rather than by permitting the government to insulate certain laws from judicial scrutiny.

**D.     The Court Should Waive Bond Or Require Only Nominal Security.**

Because Defendants will not suffer monetary hardship and this matter involves a constitutional violation and the public interest, the Court should either waive Rule 65(c)'s bond requirement or impose only a nominal bond. *See, e.g.*, *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (district court has "discretion as to the amount of security required, if any"); *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) ("requiring nominal bonds is perfectly proper in public interest litigation").

**E.      The Court Should Advance The Merits Hearing And Consolidate It With The Preliminary Injunction Pursuant to FRCP 65(a)(2).**

If the Court does not grant summary judgment, Plaintiffs request that the Court advance the trial on the merits and consolidate it with the preliminary injunction hearing pursuant to Federal Rule of Civil Procedure 65(a)(2), as the Court did in *Miller*. An expedited merits hearing is appropriate because Plaintiffs' challenge raises only issues of law such that discovery and additional factual development is unnecessary. *See Slidewaters LLC v. Wash. State Dep't of Lab. & Indus.*, 4 F.4th 747, 760 (9th Cir. 2021).

## V.  CONCLUSION

For the reasons set forth above, the Court should issue an order declaring unconstitituional and enter a permanent injunction enjoining enforcement or application of SB 1327's fee-shifting penalty set forth in California Code of Civil Procedure section 1021.11 against Plaintiffs, Plaintiffs' members, and any attorney or law firm representing any Plaintiff in any litigation involving Defendants potentially subject to SB 1327's fee-shifting penalty.

Dated:  March 28, 2023                    BENBROOK LAW GROUP, PC


                                          By  s/ Bradley A. Benbrook
                                          _____
                                             BRADLEY A. BENBROOK
                                             Attorneys for Plaintiffs