Dick A. Semerdjian (SBN 123630)
John A. Schena (SBN 269597)
Chad M. Thurston (SBN 339151)
**SCHWARTZ SEMERDJIAN CAULEY & EVANS LLP**
101 West Broadway, Suite 810
San Diego, CA 92101
Telephone No. 619.236.8821
Facsimile No. 619.236.8827
Email: das@sscelaw.com
john@sscelaw.com
chad@sscelaw.com

Attorneys for Defendant
COUNTY OF IMPERIAL

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIREARMS POLICY COALITION, INC.; CALIFORNIA GUN RIGHTS FOUNDATION; SAN DIEGO COUNTY GUN OWNERS PAC,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO; COUNTY OF IMPERIAL; COUNTY OF ALAMEDA; COUNTY OF VENTURA; COUNTY OF LOS ANGELES; CITY OF SAN JOSE; and COUNTY OF SANTA CLARA,<br><br>Defendants. | Case No. 3:23-cv-00400-LL-AGS<br><br>**RESPONSE OF DEFENDANT COUNTY OF IMPERIAL TO ORDER TO SHOW CAUSE [ECF No. 18]**<br><br>Judge: Hon. Linda Lopez<br>Magistrate: Hon. Allison H. Goddard<br><br>Complaint Filed: March 2, 2023 |

## I. INTRODUCTION

Defendant County of Imperial submits this response to the Court's March 14, 2023 Order to Show Cause to Plaintiffs in this action, as to why this case should not be dismissed. This Response is submitted on behalf of defendants County of Imperial, County of Santa Clara, County of Ventura, County of Los Angeles, City of San Jose, and City of Ventura. Specifically, the Court ordered Plaintiffs to show cause as to: (1) why they have Article III standing; (2) why their claims are ripe for resolution; (3) why venue is proper in this district; and (4) why their claims against each defendant are properly joined into a single action. Plaintiffs filed a response. (ECF No. 19.)  This response addresses the issues of standing and ripeness.

### A. This suit should be dismissed because Plaintiffs lack Article III standing.

This case presents threshold questions of standing.  As this Court is well aware, Article III limits the jurisdiction of federal courts to "cases" and "controversies."  *Casey v. Lewis*, 4 F.3d 1516, 1519 (9th Cir.1993).  "Federal courts are presumed to lack jurisdiction, unless the contrary appears affirmatively from the record."  *Id.* (citation and internal quotation marks omitted).  As the parties seeking to invoke federal jurisdiction, Plaintiffs bear the burden of establishing their standing to sue.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

## II. PLAINTIFFS HAVE NOT ALLEGED THE INJURY IN FACT NECESSARY TO DEMONSTRATE STANDING

Plaintiffs here cannot demonstrate at least one of the elements of standing— "injury in fact" — the sufficient demonstration of which has been described as an "irreducible constitutional minimum" of Article III standing.  *Id.* at 560.  To sustain an "injury-in-fact" to a legally protected interest, Plaintiffs must show that the injury is both "concrete and particularized" and "actual or imminent," as opposed to "conjectural" or "hypothetical."  *Lujan*, 504 U.S. at 561.  In the present circumstance, seeking pre-enforcement review, courts have held that a plaintiff

satisfies the injury-in-fact requirement where the plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). In the Ninth Circuit, a credible threat of prosecution exists where "the government has declared its intention to enforce" the law. *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 652–53 (9th Cir. 2021) (*citing Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 533 (1925)). In *California Trucking Ass'n*, plaintiff established a credible threat of prosecution based upon "state sent letters to businesses notifying" them about the challenged law (AB-5) and the fact that the state began "moving aggressively to enforce" the law after its enactment. *Id*.

But here, as the Court noted in the Order to Show Cause, Plaintiffs are not at risk of imminent and substantial harm—both because of the district court's decision in *Miller v. Bonta*, No. 22CV1446-BEN (JLB), 2022 WL 17811114, at *4 (S.D. Cal. Dec. 19, 2022), and because Defendants have never signaled any intent to enforce or apply the state statute—a statute that they had no role in enacting. (ECF No. 18, Order at 2:13-15.) Therefore, Plaintiffs are not presently encountering a credible threat of enforcement, and it is unreasonable to believe that Plaintiffs are at risk of being liable for "ruinous attorney fees" by way of Defendants seeking fees pursuant to Code of Civil Procedure 1021.11 or, even more remotely, a court awarding such attorney's fees under that now-enjoined state statute.

Indeed, this Court in *Miller* struck down Section 1021.11 as unconstitutional:

> This Court concludes that the purpose and effect of § 1021.11 is to trench on a citizen's right of access to the courts and to discourage the peaceful vindication of an enumerated constitutional right. Because the state fee-shifting statute undermines a citizen's constitutional rights, it is this Court's role to declare its invalidity and enjoin its threat.

*Miller v. Bonta*, 22CV1446-BEN (JLB), 2022 WL 17811114, at *4. The Order has become final due to the lack of an appeal. This is of import here as Plaintiffs seek declaratory and injunctive relief only, which necessitates a further requirement that

Plaintiffs show a very significant possibility of future harm; it is insufficient for them to demonstrate only a past injury. *Bras v. California Pub. Util. Comm'n*, 59 F.3d 869, 873 (9th Cir.1995). Pre-*Miller*, the Plaintiffs would have faced uncertainty about the risk of Section 1102.11 attorney's fee exposure. Post-*Miller*, however, the threat of injury is in the past.

      Plaintiffs are not at risk of Defendants parsing the *Miller* decision to distinguish it in any hypothetical future Second Amendment case that Plaintiffs might bring because the *Miller* decision was comprehensive in its analysis of Section 1021.11. As the *Miller* decision notes, the Attorney General refused to defend the constitutionality of the statute. *Id*. at *1. Thus, under the post-*Miller* state of the law in California, the threat that Plaintiffs will be subject to Section 1021.11 fees is neither actual nor imminent. Plaintiffs nevertheless argue that the *Miller* injunction has limited impact because the local government Defendants here are not in privity with the State.[1] (ECF No. 19 at 3:23-28.) While perhaps technically true, from a pragmatic standpoint the statute is now "red-flagged" on Westlaw as unconstitutional and pre-empted. Under these circumstances, there is no legitimate risk that any entity would seek to invoke Section 1021.11, or that any court would allow it to be enforced. Any future local government defendant is unlikely to attempt to distinguish the *Miller* decision from their own case given the comprehensiveness of the ruling and the court's clear directive that it has broad preclusive effect.

---

[1] Notably, the Court's injunction against Section 1021.11 was broad:

> Defendant Attorney General Rob Bonta and Intervenor-Defendant Governor Gavin Newsom, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, and those who gain knowledge of this injunction order or know of the existence of this injunction order, are enjoined from implementing or enforcing California Code of Civil Procedure § 1021.11, as enacted by S.B. 1327.

*Miller v. Bonta*, No. 22CV1446-BEN (JLB), 2022 WL 17811114, at *8.

Plaintiffs next argue that the *Miller* decision does not provide adequate assurance of non-enforceability because Defendants have not made affirmative statements of non-enforcement. (ECF No. 19 at 4:10-13.) But Plaintiffs' "affirmative" assertion argument is not supported by the law or common sense. Plaintiffs suggest that successfully striking down a statute as unconstitutional should give rise to the ability to extract promises from local government defendants not to seek fees under that same unconstitutional and already enjoined statute. Or, without such affirmative promises, they are entitled to secure such post-injunction assurances by way of the courts. Yet, none of the four cases cited by Plaintiffs supports that they would have standing to obtain post-injunction relief because each of the cases involve the distinguishable fact that these others cases involved initial challenges lodged against the state or state actor responsible for enacting the alleged unconstitutional statue: *New Hampshire Right to Life Political Action Committee v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996) (suit against Secretary of State for capping independent political expenditures); *Virginia v. American. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988) (suit against the State, under the First Amendment, challenging a statute making it unlawful to knowingly display sexually explicit material accessible to juveniles); and *Babbitt v. United Farm Workers National Union*, 442 U.S. 289 (1979) (lawsuit against the Governor of Arizona challenging constitutionality of Arizona Agricultural Employment Relations Act); *Arizona Right to Life Political Action Committee v. Bayless*, 320 F.3d 1002, 1007 (9th Cir. 2003) (suit against Arizona Attorney General challenging constitutionality of political advertising law). Thus, none of those cases supports the concept Plaintiffs propose here, to endorse perpetual litigation to re-prove that the already-enjoined statute is still unconstitutional.

Plaintiffs' demand of an "affirmative" promise from the municipal defendants is also impractical and improper. There is no credible threat that a governmental actor is seeking to or has plans to seek Section 1021.11 fees. There is simply no

legal or practical requirement for public officials to publicly state that they will follow the law and the courts' decisions about such laws.  Thus, because Section 1021.11 has been declared unconstitutional by a district court in California, particularly in the manner here—*i.e*., with the California Attorney General refusing to defend it—the probability that any municipal defendant will seek attorney's fees under the enjoined statute is beyond negligible and the risk of actual harm—*i.e.* that any state or federal court will award fees under the enjoined statute—is nothing more than empty conjecture.  In the absence of a credible threat that Defendants will invoke Section 1021.11 against them, Plaintiffs' choice to censor themselves by purportedly declining to file Second Amendment lawsuits cannot supply Article III injury-in-fact.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) ("[R]espondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.").

     The risk of injury to Plaintiffs is speculative for yet another reason.  Plaintiffs have threatened Defendants with lawsuits challenging the entities' application and enforcement of the entities' licensing regime for carrying concealed firearms under the Second and Fourteenth Amendment.  However, as the Court in *South Bay Rod & Gun Club, Inc. v. Bonta*, No. 22CV1461-BEN (JLB), 2022 WL 17811113, at *4 (S.D. Cal. Dec. 19, 2022) further held, Section 1021.11's fee-shifting provisions violate the Supremacy Clause because those provisions directly conflict with the fee-shifting statute in 42 U.S.C. §1988.  Section 1988, as a fee-shifting statute, is intended to encourage the protection of constitutional rights by rewarding plaintiffs who prevail in a constitutional challenge.  It is reasonable to expect that Plaintiffs will seek attorney fees pursuant to Section 1998 in the threated litigation just like they have in this case.  (*See*, ECF No.1, Complaint at Prayer ¶6.)  Under Section 1988, a prevailing plaintiff is entitled to attorney fees.  Where state or local governments are defendants, the Supreme Court construes Section 1988 as

permitting defensive fees only where the plaintiff's claim is "vexatious, frivolous, or brought to harass or embarrass the defendant." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). But as the *South Bay Rod & Gun Club* court held, Section 1021.11's fee-shifting provisions violate the Supremacy Clause and may not override the fee-shifting statue of Section 1988. Thus, Plaintiffs' purported concern, that they might be injured by the threat of Section 1021.11 fees in their threatened constitutional challenge to the municipalities' practices regarding concealed carry permits, is not imminent or concrete, thus, vitiating their standing claim.

### B. For many of the same reasons discussed above, Plaintiffs' claims also are not ripe.

As this Court has recognized, Plaintiffs also do not have a ripe claim. (ECF No. 18 at 2.) Courts have noted that "sorting out where standing ends and ripeness begins is not an easy task." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). The Supreme Court instructs that ripeness is "peculiarly a question of timing," designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967). In threat-of-enforcement cases, courts have often considered that the standing and ripeness issues turn on the same question: credibility of the threat of imminent enforcement. *Susan B. Anthony*, 573 U.S. at 157 n.5. Thus, the lack of any clear threat of imminent enforcement defeats ripeness. *Renne v. Geary*, 501 U.S. 312, 320–25 (1991). For the reasons detailed above, Plaintiffs cannot genuinely allege a credible risk of harm of Section 1021.11 being invoked or enforced against them. Thus, Plaintiffs' claims are also not ripe, and could be dismissed on that additional basis.

### III. CONCLUSION

Plaintiffs lack standing to bring a pre-enforcement action and the action should be dismissed in its entirety.

Dated: April 11, 2023

SCHWARTZ SEMERDJIAN CAULEY & EVANS LLP

By: /s/ John A. Schena
Dick A. Semerdjian
John A. Schena
Chad M. Thurston
Attorneys for Defendant
COUNTY OF IMPERIAL