1 | MATTHEW D. ZINN (State Bar No. 214587)
RYAN K. GALLAGHER (State Bar No. 344349)
2 | SHUTE, MIHALY & WEINBERGER LLP
396 Hayes Street
3 | San Francisco, California 94102
Telephone: (415) 552-7272
4 | Facsimile: (415) 552-5816
zinn@smwlaw.com
5 | rgallagher@smwlaw.com

6 | Attorneys for Defendant
County of Alameda

7

8

9 | **UNITED STATES DISTRICT COURT**

10 | **SOUTHERN DISTRICT OF CALIFORNIA**

11

12 | FIREARMS POLICY             | Case No. 3:23-cv-00400-LL-DDL
COALITION, INC.; CALIFORNIA
13 | GUN RIGHTS FOUNDATION;        | **RESPONSE OF DEFENDANT**
SAN DIEGO COUNTY GUN          | **COUNTY OF ALAMEDA TO**
14 | OWNERS PAC,                   | **ORDER TO SHOW CAUSE**

15 |            Plaintiffs,         | By invitation of the Court (ECF
                                 | No. 18)
16 |     v.

17 | CITY OF SAN DIEGO; COUNTY
OF IMPERIAL; COUNTY OF
18 | ALAMEDA; COUNT OF
VENTURA; COUNTY OF LOS
19 | ANGELES; CITY OF SAN JOSE;
and COUNTY OF SANTA CLARA,
20
              Defendants.
21

22

23

24

25

26

27

28

---

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... 3

INTRODUCTION ......................................................................................... 5

ARGUMENT ................................................................................................. 6

    I.    This case should be dismissed for lack of standing because Plaintiffs cannot show that any alleged injury is fairly traceable to Defendants. ................................................................... 6

    II.    Plaintiffs' claims should be dismissed because Defendants are misjoined and venue is improper in the Southern District of California for the Non-resident Defendants. ............................... 9

CONCLUSION ............................................................................................ 15

RESPONSE OF DEFENDANT COUNTY OF ALAMEDA TO OSC
Case No. 3:23-cv-00400-LL-DDL

# TABLE OF AUTHORITIES

## CASES

*Almont Ambulatory Surgery Center, LLC v. UnitedHeath Group, Inc.*,
  99 F. Supp. 3d 1110 (C.D. Cal. 2015)......................................................12

*Am. Civ. Liberties Union v. Fl. Bar*,
  999 F.2d 1486 (11th Cir. 1993) ...............................................................8

*Brewster v. City of Los Angeles*,
  Case No. EDCV 14-2257 JGB (SPx), 2019 WL 7707886 (C.D. Cal.
  July 19, 2019) .......................................................................................7

*Bryant v. California Brewers Association*,
  585 F.2d 421 (9th Cir. 1978) ............................................................12, 13

*Cal. Brewers Ass'n v. Bryant*,
  444 U.S. 598 (1980) ...............................................................................12

*City of Canton v. Harris*,
  489 U.S. 378 (1989) .................................................................................6

*Coughlin v. Rogers*,
  130 F.3d 1348 (9th Cir. 1997) ...............................................................10

*Dakota Rural Action v. Noem*,
  Civ 19-5026, 2019 WL 4546908 (D.S.D. Sept. 18, 2019) ...............6, 7, 8

*Desert Empire Bank v. Ins. Co. of N. Am.*,
  623 F.2d 1371 (9th Cir. 1980) ..........................................................10, 14

*Evers v. Custer County*,
  745 F.2d 1196 (9th Cir. 1984) .................................................................7

*Golden Scorpio Corp. v. Steel Horse Bar & Grill*,
  596 F. Supp. 2d 1282 (D. Ariz. 2009)..................................................9, 15

*Khalaj v. United States*,
  474 F. Supp. 3d 1029 (D. Ariz. 2020) ......................................................9

*Los Angeles County v. Humphries*,
  562 U.S. 29 (2010) ...................................................................................6

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .................................................................................6

*Miller v. Bonta*,
  No. 3:22-cv-1446-BEN-MDD, 2022 WL 17811114 (S.D. Cal. Dec.
  19, 2022) ..........................................................................................8, 13

*Nichols v. Brown*,
  859 F. Supp. 2d 1118 (C.D. Cal. 2012)..................................................6, 7

RESPONSE OF DEFENDANT COUNTY OF ALAMEDA TO OSC
Case No. 3:23-cv-00400-LL-DDL

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986) ........................................................ 6

*Rush v. Sport Chalet, Inc.*,
    779 F.3d 973 (9th Cir. 2015) ...................................... 9, 12

*Spaeth v. Mich. State Univ. Coll. of Law*,
    845 F. Supp. 2d 48 (D.D.C. 2012)............................. 10, 11, 12

*U.S. ex rel. Doe v. Taconic Hills Cent. Sch. Dist.*,
    8 F. Supp. 3d 339 (S.D.N.Y. 2014) ................................ 15

*United States v. Mississippi*,
    380 U.S. 128 (1965) ...................................................... 13

*Wilson v. Stoker*,
    819 F.2d 943 (10th Cir. 1987) ......................................... 8

*Wynn v. Nat'l Broad. Co., Inc.*,
    234 F. Supp. 2d 1067 (C.D. Cal. 2002).................... 10, 11, 12, 13

## STATUTES

28 U.S.C. § 1391(b)....................................................... 14

28 U.S.C. § 1391(b)(1).................................................... 14

28 U.S.C. § 1391(c)(2).................................................... 14

28 U.S.C. § 1406(a)....................................................... 15

## CALIFORNIA CONSTITUTION

Cal. Const., art. XI, § 7.................................................. 11

## STATE STATUTES

Cal. Civ. Proc. Code § 1021.11 ................................... passim

## RULES

Fed. R. Civ. P. 21......................................................... 9, 14

## TREATISES

7 Charles Alan Wright & Arthur R. Miller, Federal Practice &
    Procedure § 1683 (3d ed. 2022) .................................... 9

RESPONSE OF DEFENDANT COUNTY OF ALAMEDA TO OSC
Case No. 3:23-cv-00400-LL-DDL

# INTRODUCTION

As this Court recognized in its Order to Show Cause (ECF No. 18 at 1–2), Plaintiffs lack standing to bring this suit. Plaintiffs' issue is with California Code of Civil Procedure section 1021.11, a statute enacted by the California State Legislature. Plaintiffs have not alleged that any of the Defendants played any role in its adoption or have implemented any policy or practice to enforce it. Accordingly, Plaintiffs cannot satisfy the causation or redressability requirements of Article III standing. The Court should therefore dismiss their claims for lack of subject matter jurisdiction.

In the alternative, Plaintiffs' claims should be dismissed without prejudice for improper joinder and venue. Plaintiffs have attempted to join as defendants in this action seven separate California cities and counties. These local governments are scattered throughout the state. They have neither enacted a common policy nor taken any concerted action that could possibly link Plaintiffs' discrete claims against them. And to the extent that Plaintiffs have interacted with these local governments at all, it has been on an individualized basis, regarding the entirely distinct lawsuits that Plaintiffs allege they might someday file against each entity's individual firearms regulations—regulations adopted independently by each entity under its local police power.

The Federal Rules of Civil Procedure do not allow the permissive joinder of multiple defendants under these circumstances. *See* ECF No. 18 at 3. And because Defendants were improperly joined, venue is improper as to the five defendants not located in the Southern District of California.[1] *See id.* at 2–3. To cure these joinder and venue defects, Plaintiffs' claims against the five Non-resident Defendants should be dismissed without prejudice.

---

[1] These five jurisdictions (collectively, "Non-resident Defendants") are the City of San Jose and the Counties of Alameda, Los Angeles, Santa Clara, and Ventura.

RESPONSE OF DEFENDANT COUNTY OF ALAMEDA TO OSC
Case No. 3:23-cv-00400-LL-DDL

**ARGUMENT**

**I.   This case should be dismissed for lack of standing because Plaintiffs cannot show that any alleged injury is fairly traceable to Defendants.**

Plaintiffs lack standing to bring their claims. One indispensible requirement of standing is that the plaintiff's alleged injury be fairly traceable to the defendant's conduct. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Additionally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (citation omitted). Plaintiffs have alleged no facts that would connect these Defendants to any purported injury from Section 1021.11. *See* ECF No. 18 at 2.

When raising section 1983 claims against municipal defendants—including claims seeking injunctive or declaratory relief—plaintiffs must be able point to a "policy," "practice," or "custom" of the municipality that has caused the infringement of their constitutional rights. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986); *Los Angeles County v. Humphries*, 562 U.S. 29, 37, 39 (2010). Consequently, if the plaintiff cannot identify a "policy" or "practice" of the defendant municipality that is responsible for its purported injury, it cannot satisfy the causation or redressability elements of Article III standing. *See Nichols v. Brown*, 859 F. Supp. 2d 1118, 1133–34 (C.D. Cal. 2012) (holding, in the absence of allegations of a municipal policy, that "Plaintff's claims do not establish that the [city defendants] have any connection to his alleged injury and fail to satisfy the second [causation] prong of the standing analysis."); *id.* at 1134 (concluding redressability prong also cannot be satisfied where plaintiff identifies no municipal "policy"); *Dakota Rural Action v. Noem*, Civ 19-5026, 2019 WL 4546908, at *5 (D.S.D. Sept. 18, 2019) (same).

Plaintiffs in this case have not come close to alleging the sort of municipal "policy" or "practice" that would be necessary to fulfill the causation and

6

redressability elements of Article III standing. Plaintiffs' ultimate issue is with Section 1021.11—a *state* statute. Defendant *local* governments have formulated no policy or practice about implementing that statute and have never sought or signaled any inclination to enforce it.[2] *See* ECF No. 18 at 2. In fact, before Plaintiffs initiated this action, Defendants' only connection to Section 1021.11 was that they happened to be located within the state where it was enacted. Plaintiffs have identified nothing about *these* defendants to differentiate them from the other 53 counties and 480 cities in California. Without being able to point to a local "policy" or "practice" that is responsible for their alleged injuries, Plaintiffs cannot establish the causation or redressability elements of standing. *See Nichols*, 859 F. Supp. 2d at 1133–34; *Dakota Rural Action*, 2019 WL 4546908, at *5.

The decision in *Dakota Rural Action* is directly on point. The plaintiffs brought a pre-enforcement challenge against both state and county officials seeking to enjoin their enforcement of a new state law that imposed penalties for supporting certain forms of protests, on the grounds that the law chilled the plaintiffs' protected speech in violation of the First Amendment. 2019 WL 4546908, at *1–2.

The court examined whether the plaintiffs "ha[d] alleged a nexus between their injuries and an official policy of [the county] in order to determine whether they ha[d] standing to sue" the county officials. *Id.* at *3. It held the critical questions were "whether the unconstitutional act 'may fairly

---

[2] A different case might be presented where a municipality has adopted a local policy or practice to enforce an unconstitutional state law. *See Brewster v. City of Los Angeles*, Case No. EDCV 14-2257 JGB (SPx), 2019 WL 7707886, at *7 n.6 (C.D. Cal. July 19, 2019) (citing *Evers v. Custer County*, 745 F.2d 1196, 1203 (9th Cir. 1984)). Here, however, Plaintiffs have not identified any policy or practice of any Defendant to enforce Section 1021.11.

RESPONSE OF DEFENDANT COUNTY OF ALAMEDA TO OSC
Case No. 3:23-cv-00400-LL-DDL

be said to represent official policy' of th[e] municipality and whether the policy was the 'moving force' behind the violation." *Id.* at *5 (citation omitted). Thus, the court continued, the plaintiffs must allege "a 'direct causal link' between a municipal policy and the alleged constitutional violation, and a 'deliberate choice [by the municipality] to follow a course of action . . . made from among various alternatives.'" *Id.* (citation omitted).

The court found the essential "causal link" was missing. "Plaintiffs have failed to allege that [county] sheriff officials have made any choices at all regarding enforcement of the challenged laws that could cause a violation of Plaintiffs' First Amendment rights. Plaintiffs' allegations show only that a policy choice was made by State officials." *Id.* Accordingly, the court dismissed the claims against the county officials for lack of standing. *Id.* Plaintiffs' suit should be disposed of in the same way here, for the same reasons.

The proper course of action for Plaintiffs is the one they took previously: suing *State* officials. "Under United States Supreme Court precedent, when a plaintiff challenges the constitutionality of a rule of law, it is the state official designated to enforce that rule who is the proper defendant, even when that party has made no attempt to enforce the rule." *Am. Civ. Liberties Union v. Fl. Bar*, 999 F.2d 1486, 1490 (11th Cir. 1993); *see also Wilson v. Stoker*, 819 F.2d 943, 947 (10th Cir. 1987) (holding state attorney general was proper defendant in pre-enforcement challenge to state statute due to attorney general's broad enforcement authority). Plaintiffs properly sought from California state officials—and have now successfully obtained—all injunctive and declaratory relief available to them. *See Miller v. Bonta*, No. 3:22-cv-1446-BEN-MDD, 2022 WL 17811114, at *8 (S.D. Cal. Dec. 19, 2022). That relief effectively discourages anyone, including Defendants, from even attempting to invoke Section 1021.11 against Plaintiffs. Whatever additional, amorphous "relief"

RESPONSE OF DEFENDANT COUNTY OF ALAMEDA TO OSC
Case No. 3:23-cv-00400-LL-DDL

Plaintiffs may now wish to obtain from defendant local governments is not relief available to them at this juncture under Article III.

If the Court dismisses this action for lack of subject matter jurisdiction, it need not reach the joinder or venue issues discussed below. *Cf. Khalaj v. United States*, 474 F. Supp. 3d 1029, 1033 (D. Ariz. 2020) ("When a motion to dismiss is based on more than one ground, the court should consider the Rule 12(b)(1) challenge first because the other grounds will become moot if the court lacks subject matter jurisdiction.").

## II. Plaintiffs' claims should be dismissed because Defendants are misjoined and venue is improper in the Southern District of California for the Non-resident Defendants.

The Federal Rules of Civil Procedure permit the Court to drop misjoined parties from an action. Fed. R. Civ. P. 21. Because Rule 21 does not supply its own standard for misjoinder, courts look to whether Rule 20's requirements for the permissive joinder of parties have been satisfied. 7 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1683 (3d ed. 2022). Under Rule 20, the permissive joinder of defendants requires *both* (1) that the right to relief asserted against all defendants "aris[es] out of the same transaction, occurrence, or series of transactions or occurrences"; *and* (2) that the action raises a question of law or fact common to all defendants.[3] *Rush v. Sport Chalet, Inc.*, 779 F.3d 973, 974 (9th Cir. 2015) (quoting Fed. R. Civ. P. 20(a)(2)). These two requirements implicate distinct concerns. Thus the mere presence of a common question of law does not demonstrate the existence of a common transaction or occurrence. *Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282, 1285 (D. Ariz. 2009). In addition, permissive joinder of a defendant under Rule 20 must "comport with the principles of fundamental

---

[3] For the limited purposes of this Response, Defendants do not contest that Plaintiffs' claims may implicate at least one question of law common to all Defendants.

fairness." *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980).

To satisfy Rule 20's "same transaction or occurrence" requirement, plaintiffs must allege more than merely that all defendants are similarly situated or even that they have violated the same laws in comparable ways. *See Wynn v. Nat'l Broad. Co., Inc.*, 234 F. Supp. 2d 1067, 1078–80 (C.D. Cal. 2002); *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("Plaintiffs do not allege that their claims arise out of a systematic pattern of events and, therefore, arise from the same transaction or occurrence."); *Spaeth v. Mich. State Univ. Coll. of Law*, 845 F. Supp. 2d 48, 53 (D.D.C. 2012). Rather, plaintiffs must be able to point either to some "concerted action between defendants," *Spaeth*, 845 F. Supp. 2d at 53, or to a "collective or controlling entity" that binds defendants to a shared, uniform policy, *Wynn*, 298 F. Supp. 2d at 1079–80.

Here, the Court's skepticism in the OSC that "Plaintiffs' claims against each defendant are sufficiently related to each other such that they should be litigated in the same lawsuit" is apt. ECF No. 18 at 3. The discrete claims against the seven unrelated defendant local governments do not arise out of the same transaction or occurrence. Plaintiffs have alleged no concerted action, agreement, or even communication among them. Plaintiffs' entire theory boils down to a pair of immaterial observations: (1) the California State Legislature has enacted a new law, California Code of Civil Procedure section 1021.11 ("Section 1021.11"); and (2) Defendants have not yet expressly conceded—on Plaintiffs' own exact terms—that Defendants will not seek to apply Section 1021.11 in hypothetical future Second Amendment suits that Plaintiffs allege they might someday bring against them. *See* ECF No. 19 at 6, 8.

These two facts do not come close to a concerted action or shared policy. Plaintiffs do not allege that Defendants played any role in the Legislature's adoption of Section 1021.11. *See* ECF No. 1 ¶¶ 18, 20; ECF No. 19 at 6. And

10

they do not allege that Defendants have ever applied Section 1021.11 or signaled that they would in the future. *See* ECF No. 18 at 2. Section 1021.11 therefore is not a policy developed by or binding upon Defendants and cannot constitute the "same transaction or occurrence" that unifies all of Plaintiffs' claims. *See Spaeth*, 845 F. Supp. 2d at 54 (requiring plaintiffs point to a "shared policy" pursuant to which each defendant actually acted); *Wynn*, 234 F. Supp. 2d at 1067 (same).

Furthermore, as Plaintiffs' own submissions make clear, Defendants' individual interactions with Plaintiffs evince no concerted action or common policy among Defendants. Plaintiffs' counsel contacted Defendants to demand that they stipulate to non-enforcement of Section 1021.11 via separate letters, sent on different dates, referencing each jurisdiction's own distinct firearms regulations.[4] *See* ECF No. 1, Exs. 1, 2, 3, 5, 6, 8, 10; ECF No. 1 ¶¶ 47–55. Plaintiffs received no shared or uniform response. Some Defendants declined Plaintiffs' demands outright. *See* ECF No. 1, Exs. 4, 9; ECF No. 1 ¶¶ 47, 49, 50, 54. At least one Defendant indicated it could not agree to Plaintiffs' exact terms, but would be willing to discuss a stipulation regarding Section 1021.11 on a case-by-case basis, if a challenge to its regulations were ever filed. *See* ECF No. 1, Ex. 7; ECF No. 1 ¶ 52. Several Defendants simply did not respond at all. *See* ECF No. 1 ¶¶ 48, 51, 55. To the extent Plaintiffs' claims arise from these interactions, rather than from Section 1021.11 itself, Plaintiffs have pointed to nothing more than distinct "autonomous . . . decisions," made "at different times, for different reasons, with regard to" different underlying facts.

---

[4] The various defendant jurisdictions adopted their distinct firearms regulations at different times, under their respective police powers. *See* Cal. Const., art. XI, § 7. Thus, these underlying regulations also are not a "common policy" that could tie together Plaintiffs' claims. And Plaintiffs have not alleged that they could.

RESPONSE OF DEFENDANT COUNTY OF ALAMEDA TO OSC
Case No. 3:23-cv-00400-LL-DDL

*Wynn*, 234 F. Supp. 2d at 1080. That is far short of the sort of common conduct or policy that the "same transaction or occurrence" prong requires. *See id.*; *Spaeth*, 845 F. Supp. 2d at 54. And because Plaintiffs cannot satisfy *both* of Rule 20's mandatory requirements, Defendants are misjoined. *Rush*, 779 F.3d at 974.

Plaintiffs' cases only further illustrate why joinder is inappropriate here. The Ninth Circuit's four-sentence discussion of joinder in *Bryant v. California Brewers Association* turned on the fact that each defendant brewery had affirmatively signed on to and was bound by the single statewide collective bargaining agreement that was at issue in the lawsuit. *See* 585 F.2d 421, 425 (9th Cir. 1978) (noting that all breweries, as signatories to the agreement, "support and maintain the disputed contract provisions"), *vacated on other grounds*, *Cal. Brewers Ass'n v. Bryant*, 444 U.S. 598 (1980); *id.* at 423 n.1 (observing the agreement had been negotiated on behalf of all defendant breweries by a single industry group). The coordination and formal agreement among defendants that justified joinder in *Bryant* is precisely what is missing in this case.[5] As discussed above, Defendants did not participate in the State's adoption of Section 1021.11. They have entered into no common agreement about its application, nor has any defendant ever attempted to enforce it. Defendants are linked only by the happenstance of having each enacted a regulation on firearms and having apparently incurred Plaintiffs' discontent for doing so.

---

[5] *Almont Ambulatory Surgery Center, LLC v. UnitedHeath Group, Inc.*, 99 F. Supp. 3d 1110 (C.D. Cal. 2015), is distinguishable for the same reason. There, the court found Rule 20(a)(2)'s "same series of transactions or occurrences" prong satisfied only after concluding that plaintiffs had pleaded that defendants' conduct was all "part of the larger systematic behavior" of improperly withholding payment for a particular type of medical service. 99 F. Supp. 3d at 1188. It is precisely that concerted "system[]" of behavior among defendants that is missing here.

12

Against this backdrop, Plaintiffs have not and cannot allege the sort of concerted action that *Bryant* held sufficient to satisfy Rule 20.

Similarly, in *United States v. Mississippi*, the complaint "charged a long-standing, carefully prepared, and faithfully observed plan" to disenfranchise Black voters, a plan "which the . . . statistics included in the complaint would seem to show had been remarkably successful." 380 U.S. 128, 135–36 (1965). Indeed, "*Mississippi* involved a clear nexus between all of the discriminating individuals that justified joining all of the parties into a single case, namely a state-wide discriminatory voting registration law that each county enforced as an instrumentality of the state." *Wynn*, 234 F. Supp. 2d at 1080. There is no statewide "plan" here—much less one bearing all the essential attributes that *Mississippi* emphasized. Even putting aside Defendants' complete lack of involvement with Section 1021.11 before or after its enactment, the 14-week-old Section 1021.11 is not "longstanding." It certainly is not "faithfully observed," given that the State is now enjoined from enforcing it, and Defendants have never signaled any intent to apply it themselves. *See Miller*, 2022 WL 17811114, at *8; ECF No. 18 at 2; ECF No. 1 ¶¶ 46–55. And Plaintiffs have marshalled no statistical evidence showing that Section 1021.11 has actually had the chilling effect on Second Amendment litigation that they allege. In the absence of an analogous statewide "plan," the *Mississippi* decision is not a blank check for plaintiffs to sue in a single action all entities that could theoretically avail themselves of a law that plaintiffs find objectionable.

As a fallback, Plaintiffs suggest that even if Defendants *are* misjoined under Rule 20(a)(2), the Court can and should allow the action to proceed as-is because correcting the misjoinder would unduly prejudice Plaintiffs. *See* ECF No. 19 at 9–10. This is incorrect, both as a matter of law and fact. Prejudice alone cannot trump Rule 20's twin requirements. *See Wynn*, 234 F. Supp. 2d at 1078 ("[Rule 20(a)'s two] requirements must be satisfied in order to *allow*

for joinder under Rule 20(a), however, even if these requirements are satisfied, there is no requirement that the parties *must* be joined."). Regardless, any inconvenience Plaintiffs may experience from dismissal does not outweigh the fundamental unfairness to misjoined Defendants of being forced to continue to litigate these unrelated matters in an improper venue, as explained below.[6] *See Desert Empire Bank*, 623 F.2d at 1375. Defendants are aware of no statute of limitations problems or other procedural barriers that would preclude Plaintiffs from re-filing their claims in the appropriate fora after the current claims are dismissed.

Plaintiffs' failure to satisfy Rule 20's requirements would be reason enough to dismiss their claims. *See* Fed. R. Civ. P. 21. But dismissal without prejudice is necessary here for an additional reason: severing the claims against each Defendant would make venue in this Court improper as to the Non-resident Defendants. As this Court correctly recognized, none of the Non-resident Defendants has "any obvious connection to this district," and no "substantial part of the events or omissions giving rise to Plaintiffs' claims" against these Defendants occurred in this district. ECF No. 18 at 3; *see also* 28 U.S.C. § 1391(b), (c)(2). Plaintiffs have effectively conceded this. *See* ECF No. 19 at 5–6 (contending venue is proper only because the Non-resident Defendants are located in California and the other two Defendants do reside in the Southern District); *see also* ECF No. 1 ¶ 7 (alleging venue is proper only on the basis of residence under § 1391(b)(1)). Courts routinely dismiss claims against

---

[6] Plaintiffs are correct that dismissal of an entire action is not a remedy available under Rule 21. *See* ECF No. 19 at 9 (quoting Fed. R. Civ. P. 21). That is not a problem here. Plaintiffs' claims against one or both of Defendants City of San Diego and County of Imperial could move forward in this Court after the claims against Non-resident Defendants are dismissed. *See id.* at 9–10 (conceding this outcome would be permissible under the Federal Rules).

14

misjoined defendants where severing the claims would result in venue issues. *See, e.g.*, *U.S. ex rel. Doe v. Taconic Hills Cent. Sch. Dist.*, 8 F. Supp. 3d 339, 344–45 (S.D.N.Y. 2014); *Golden Scorpio Corp.*, 596 F. Supp. 2d at 1285–86, 1288; *see also* 28 U.S.C. § 1406(a) (permitting district court to dismiss a case when venue is improper). In short, dismissing without prejudice all claims against Non-resident Defendants is the most prudent way to remedy the inter-related joinder and venue defects in Plaintiffs' action.

**CONCLUSION**

Because Plaintiffs lack standing, the Court should dismiss Plaintiffs' action in with prejudice for lack of Article III jurisdiction. Alternatively, the Court should dismiss without prejudice all claims against Non-resident Defendants on the basis of misjoinder and improper venue.

DATED:  April 11, 2023                SHUTE, MIHALY & WEINBERGER LLP


By:    s/Matthew D. Zinn
       _____
       MATTHEW D. ZINN

       Attorney for Defendant
       County of Alameda

15
