BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
701 University Avenue, Suite 106
Sacramento, CA  95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

JOHN W. DILLON
DILLON LAW GROUP APC
2647 Gateway Rd, Suite 105 No. 255
Carlsbad, CA  92009-1757
jdillon@dillonlawgp.com

COOPER & KIRK, PLLC
DAVID H. THOMPSON*
PETER A. PATTERSON*
JOSEPH O. MASTERMAN*
1523 New Hampshire Avenue, NW
Washington, D.C.  20036
Telephone: (202) 220-9600
dthompson@cooperkirk.com

*Admitted *pro hac vice*

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIREARMS POLICY COALITION, INC.; CALIFORNIA GUN RIGHTS FOUNDATION; SAN DIEGO COUNTY GUN OWNERS PAC,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO; COUNTY OF IMPERIAL; COUNTY OF ALAMEDA; COUNTY OF VENTURA; COUNTY OF LOS ANGELES; CITY OF SAN JOSE; and COUNTY OF SANTA CLARA,<br><br>Defendants. | Case No.:  3:23-cv-00400-LL-DDL<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSES RE: ORDER TO SHOW CAUSE (ECF No. 18)** |

Defendants have submitted two joint responses to the Court's Order To Show Cause. *See* Imperial Resp. to Order To Show Cause, Doc. 30 (Apr. 11, 2023) ("Imperial Resp."); Alameda Resp. to Order To Show Cause, Doc. 33 (Apr. 11, 2023) ("Alameda Resp."). Neither addresses this Court's persuasive and correct jurisdictional analysis in *Miller* or contests the basic facts that render Plaintiffs' claims justiciable, properly joined, and properly filed in this District.

## I.   Plaintiffs Have Standing To Seek Relief for the Ongoing Constitutional Injury Caused By Defendants' Authority To Enforce Section 1021.11.

Defendants' basic position on standing is that they must be given the option to enforce an unconstitutional statute against Plaintiffs before Plaintiffs may seek to enjoin that enforcement. That is not the law. Under the "relaxed standing analysis for pre-enforcement challenges," "the plaintiff may meet constitutional standing requirements by demonstrating a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (cleaned up). "To show such a realistic danger, a plaintiff must allege an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and a credible threat of prosecution thereunder," *id.* (cleaned up), meaning "that a prosecution is remotely possible" and "not imaginary or wholly speculative." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 299, 302 (1979) (cleaned up).

There is no dispute that Section 1021.11's enforcement threatens to subject Plaintiffs to ruinous fee liability. There is also no dispute that Section 1021.11 violates Plaintiffs' constitutional rights, as this Court held in *Miller*. Nor is there any real dispute that Section 1021.11's potential enforcement against Plaintiffs is more than "imaginary." Plaintiffs intend to engage in activity covered by the statute, namely to challenge firearms regulations in the Defendant jurisdictions. Defendants would thereafter be empowered to seek attorney's fees and costs from Plaintiffs (and Plaintiffs' attorneys) if a court ruled against Plaintiffs on any claim for any reason.

*See* Cal. Civ. Proc. Code § 1021.11(a). Indeed, Defendants *still* refuse to commit not to seek attorneys' fees from Plaintiffs under Section 1021.11 if Plaintiffs proceeded with their intended suits. Imperial County conjectures that, in light of this Court's holding in *Miller*, the "probability" is low that a Defendant would seek to enforce Section 1021.11 or that a court would award fees. Imperial Resp. at 5–6. But this Court's holding is not binding in other federal districts, where some Defendants might bring fee actions; it is not binding on state courts; and it is not even binding in other suits in this district. Moreover, as this Court recognized in *Miller*, government administrations change, and government officials can change their minds. *See* Order at 8, *Miller v. Bonta*, No. 3:33-cv-1446-BEN-MDD, Doc. 27 (S.D. Cal. Dec. 1, 2022). Defendants could attempt to enforce Section 1021.11 in the future even if they had committed not to do so here.

Plaintiffs thus have standing under general pre-enforcement standards. Given the realistic threat of enforcement in this case, however, Plaintiffs also have standing because they are *currently* suffering an injury. They have already been forced to forgo exercising their First Amendment right to access the courts by filing constitutional claims that they would otherwise file. As no Defendant contests, this "self-censorship" is itself an injury "even without an actual prosecution." *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988).

Imperial County responds that Plaintiffs face no risk of enforcement because this Court has declared Section 1021.11 unconstitutional and enjoined *State* officials from enforcing it. That is not how federal judgments work. The *Miller* injunction does not name these Defendants. *See Miller v. Bonta*, --- F. Supp. 3d ----, 2022 WL 17811114, at *8 (S.D. Cal. Dec. 19, 2022). And it could not legally bind them. "A court's judgment binds only the parties to a suit, subject to a handful of discrete and limited exceptions." *Smith v. Bayer Corp.*, 564 U.S. 299, 312 (2011). An exception would exist here only if Defendants here were "legally identified" with the *Miller* State defendants. *NLRB v. Sequoia Dist. Council of Carpenters, AFL–CIO*, 568 F.2d

628, 633 (9th Cir. 1977). Defendants here are distinct legal entities that have independent enforcement authority under Section 1021.11. They thus lack the privity necessary to be bound by the *Miller* injunction.

Imperial County is also incorrect that a plaintiff faces a credible threat of enforcement only if government officials affirmatively threaten enforcement. *See* Imperial Resp. at 3. An affirmative threat is certainly sufficient, but, as explained, not necessary. Defendants' restrictive view is contrary to the Ninth Circuit's repeated exercise of jurisdiction over challenges to new (or even existing) laws without requiring that a plaintiff actually violate the law. *See, e.g.*, *Jones v. Bonta*, 34 F.4th 704, 711–12 (9th Cir. 2022); *Fyock v. Sunnyvale*, 779 F.3d 991, 998 (9th Cir. 2015).

Imperial County further argues that Plaintiffs lack standing because Section 1021.11 *also* violates the Supremacy Clause. *See* Imperial Resp. at 6. But again, Plaintiffs are not required to wait for an unconstitutional statute to be enforced against them before challenging it. Nor would a fee award to Plaintiffs under Section 1988 somehow offset the injury of a fee award to Defendants under Section 1021.11. As explained in Plaintiffs' preliminary-injunction motion, Section 1988 is meant to encourage civil-rights suits by relieving plaintiffs of the burden of attorneys' fees. If Plaintiffs were to recoup their attorneys' fees under Section 1988 but pay Defendants' attorneys' fees under Section 1021.11, they would still suffer that burden—and Section 1988's purposes would still be undermined in violation of the Supremacy Clause. What is more, Plaintiffs will not be in a position to collect Section 1988 fees because Section 1021.11 deters them from suing.

Alameda County focuses instead on the requirement that Plaintiffs' injury be traceable to Defendants. Because Section 1021.11 was passed by the State Legislature and Defendants have not adopted an explicit "policy" or "custom" of enforcing Section 1021.11, Alameda argues that Plaintiffs lack standing to assert their claims under 42 U.S.C. § 1983. Alameda Resp. at 6. This "policy or custom" argument is not a standing argument. Although, in some cases, a plaintiff must identify a municipal

"policy or custom" to succeed on the *merits* of a § 1983 claim against a municipality, a merits requirement is not a jurisdictional requirement. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (discussing this requirement as a "merits" requirement).

In any event, Plaintiffs' claims in this case do not need to be based on a municipal policy or custom because this suit lies against Defendants based on their function as enforcement arms of the State for purposes of this State law, rather than their functions as municipalities. Whether they may be sued as arms of the State depends on their "actual function . . . in [this] particular area." *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 786 (1997). This Court has already recognized that Section 1021.11 represents a State effort to close the courts to firearms litigants. *See Miller*, 2022 WL 17811114, at **2–4. That State effort extends to litigants who might dare to challenge municipal-level firearms regulations. And that deterrent effort is enforced by the localities that enacted those regulations and that could seek fees under Section 1021.11. Defendants' "function" in this "particular area" is thus as enforcement arms of the State, and the "policy or custom" requirement does not apply.

A contrary holding would make little sense. Defendants need not adopt policies or customs to enforce Section 1021.11; they may seek fees under that law according to its terms. To receive effective relief, therefore, Plaintiffs need an injunction against Defendants just as they needed one against State officials. Otherwise, Plaintiffs will continue to suffer the exact same injuries to their constitutional rights that this Court recognized in *Miller*.

Alameda mainly relies on two cases from other districts, both of which are distinguishable. In *Nichols*, the plaintiff failed to satisfy Article III requirements by not alleging a concrete plan to violate the challenged statute, an issue that does not exist here. *See Nichols v. Brown*, 859 F. Supp. 2d 1118, 1128–29 (C.D. Cal. 2012). Defendants emphasize an additional reason why the plaintiff in that case lacked standing against municipal defendants. The plaintiff challenged a State-level firearm

regulation, but the only connection that the municipal defendants had to that law was that they had a policy of enforcing state law. *See id.* at 1133. Similarly, in *Dakota Rural Action*, the plaintiffs "admit[ted] that their claims against [the defendant sheriff] are based for the most part on the fact that the law requires sheriffs to enforce state laws." *Dakota Rural Action v. Noem*, 2019 WL 4546908, at *4 (D.S.D. Sept. 18, 2019). By contrast, Defendants are directly authorized by the State law at issue to enforce its one-way fee-shifting regime, and the traceability problem found in *Nichols* and *Dakota Rural Action* is absent. Defendants' authority to enforce Section 1021.11 causes a cognizable injury that is traceable to Defendants. That injury would be redressed by the relief sought here: an injunction against enforcement, the same kind of relief granted in *Miller*.

## II.     Plaintiffs' Claims Are Ripe.

Imperial County also argues that Plaintiffs' claims are not ripe. This argument is based on Imperial's standing argument and accordingly fails for the same reasons. Imperial cites *Renne v. Geary*, 501 U.S. 312 (1991), which involved a challenge to a California constitutional prohibition on political endorsements for nonpartisan offices. But the plaintiffs did not "allege an intention to endorse any particular candidate, nor that a candidate wants to include . . . [an] endorsement in a candidate statement." *Id.* at 321. Thus, they were not yet suffering an injury and did not have an intent to engage in conduct that would subject them to potential injury. Plaintiffs here are suffering a current injury because they are refraining from First Amendment conduct that would subject them to Section 1021.11's onerous threat of liability. Their claims are ripe.

## III.    All Defendants Are Properly Joined.

Only Alameda County raises joinder and venue arguments, and it raises them only as to "Non-resident Defendants," which do not include Imperial County and the City of San Diego. Alameda Resp. at 5 n.1. Alameda argues that joinder is inappropriate because Plaintiffs' claims do not arise from the same "transaction or occurrence," also known as the "logical relationship" test. Alameda does not contest

that, "[u]nder the Rules, the impulse is *toward*" joinder, *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) (emphasis added), or that Rule 20 "is to be construed liberally" to that end, *League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 558 F.2d 914, 917 (9th Cir. 1977). Alameda also does not contest that Plaintiffs' claims against all Defendants share common questions of law, *see* Alameda Resp. at 9 n.3, which arise from the same limited set of undisputed facts. Such commonality goes a significant way toward proving a "logical relationship," as the Ninth Circuit and this Court have recognized. *See, e.g.*, *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) (describing "transaction or occurrence" as referring to "similarity in the factual background of a claim"); *Schertzer v. Bank of Am., N.A.*, 2021 WL 1383164, at *3 (S.D. Cal. Apr. 13, 2021) ("[T]here is a logical relationship . . . . In other words, there is enough similarity in the factual background of the claim." (internal quotation marks omitted)).

Nevertheless, Alameda argues that Plaintiffs fail "to point either to some concerted action between defendants or to a collective or controlling entity that binds defendants to a shared, uniform policy." Alameda Resp. at 10 (cleaned up). Such a strict requirement is inconsistent with the "flexible" approach recognized even in the caselaw that Alameda relies upon. *See Spaeth v. Mich. State Univ. Coll. of L.*, 845 F. Supp. 2d 48, 53 (D.D.C. 2012). This case satisfies that flexible test. Plaintiffs challenge a law enforceable by all Defendants. And Plaintiffs are challenging that law *because* all Defendants can enforce it, resulting in the current infringement on Plaintiffs' constitutional rights. This "similarity in the factual background" of Plaintiffs' claims renders them logically related. *Coughlin*, 130 F.3d at 1350. To be sure, the "fact that all Plaintiffs' claims *arise under* the same general law does not necessarily establish a common question of law or fact." *Id*. at 1351 (emphasis added). But Plaintiffs' claims do not just arise under the same constitutional standards: they are directed at a single law that all Defendants can enforce in the same way, and they involve the exact same purely legal questions.

Alameda once again relies mainly on two distinguishable cases from other districts. In *Spaeth*, the plaintiff applied for teaching positions at multiple law schools and, when he was declined, sued them all for age discrimination. Aside from the facts that his claims arose under the ADEA and that the defendants were members of a common industry, nothing connected the claims: "defendants acted independently when they evaluated his candidacy." *Spaeth*, 845 F. Supp. 2d at 53–54. Similarly in *Wynn*, another employment-discrimination case, the defendants were "51 separate entities, each with distinct hiring and firing practices," and the plaintiffs were "50 individuals, some of whom ha[d] worked" or applied to work "for a few of the employers," some of whom had not—and thus whose claims arose from various different fact patterns. *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1078 (C.D. Cal. 2002). Here, by contrast, the facts that matter to Plaintiffs' purely legal claims apply to all Defendants: Section 1021.11 was enacted, Defendants can enforce it, and Plaintiffs have been deterred from constitutionally protected litigation as a result. Given this same factual basis, Plaintiffs do not need to show a "pattern or practice" adopted by a "collective or controlling entity," as they would in order to join employment claims against different defendants. *Id*. at 1078–79. Regardless, given that Defendants are sued here as enforcement arms of the State, such collective action is also present here.

This case is therefore better analogized to those cases cited in Plaintiffs' initial response, as Defendants' attempts to distinguish those cases only makes clear. *See* Pls.' Resp. to Order To Show Cause at 7, Doc. 19 (Mar. 28, 2023). Defendants do not dispute that the plaintiffs in *Bryant* and *Almont*, unlike Plaintiffs here, had claims arising from various different transactions. Nevertheless, those claims were properly joined because they resulted from the same "systematic behavior." *Id*. (internal quotation marks omitted). And Alameda provides no grounds to distinguish the systematic behavior represented by signing a statewide collective-bargaining agreement (*Bryant*), or by independently engaging in the same misconduct as other

defendants (*Almont*), from the systematic behavior represented by enforcing the same State law. Alameda's attempt to distinguish the U.S. Supreme Court's decision in *Mississippi*, meanwhile, relies on a willful blindness to the facts of this case. Alameda claims that "[t]here is no statewide 'plan' here" akin to the plan to disenfranchise voters in *Mississippi*. Alameda Resp. at 13. But Section 1021.11 manifests a statewide plan to prevent firearms litigation, a plan that all Defendants are currently effectuating.

Finally, Alameda does not deny that joinder causes no real prejudice to any Defendant but severance would prejudice Plaintiffs and the judiciary. This Court has already held that Section 1021.11 violates the U.S. Constitution. All the Court needs to do here is to apply that holding to these Defendants. Forcing Plaintiffs to litigate these claims in multiple courts will prolong the violation of their constitutional rights without saving Defendants any expense. This result is anathema to a Rule meant "to promote trial convenience and to expedite the final determination of disputes." *League to Save Lake Tahoe*, 558 F.2d at 917.

## IV.   Venue Is Proper in this District.

No Defendant denies that venue is proper here if all Defendants are properly joined. Since they are, venue is proper. *See* 28 U.S.C. § 1391(b)(1). In any event, Defendants also concede that venue is proper here at least for the claims against Imperial County and the City of San Diego.

## CONCLUSION

Because Plaintiffs' claims are justiciable, venue is proper, and Defendants are properly joined, no claims against any Defendant should be dismissed on any of these bases, and this Court should resolve Plaintiffs' Motion for Preliminary Injunction.

Dated:  April 25, 2023                   BENBROOK LAW GROUP, PC

                                         By  s/ Bradley A. Benbrook
                                         BRADLEY A. BENBROOK
                                         Attorneys for Plaintiffs