BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
701 University Avenue, Suite 106
Sacramento, CA  95825
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

JOHN W. DILLON
DILLON LAW GROUP APC
2647 Gateway Rd, Suite 105 No. 255
Carlsbad, CA  92009-1757
jdillon@dillonlawgp.com

COOPER & KIRK, PLLC
DAVID H. THOMPSON*
PETER A. PATTERSON*
1523 New Hampshire Avenue, NW
Washington, D.C.  20036
Telephone: (202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com

*Admitted *pro hac vice*

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FIREARMS POLICY COALITION, INC.; CALIFORNIA GUN RIGHTS FOUNDATION; SAN DIEGO COUNTY GUN OWNERS PAC,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO; COUNTY OF IMPERIAL; COUNTY OF ALAMEDA; COUNTY OF VENTURA; COUNTY OF LOS ANGELES; CITY OF SAN JOSE; and COUNTY OF SANTA CLARA,<br><br>Defendants. | Case No.:  3:23-cv-00400-LL-VET<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN INJUNCTION PENDING APPEAL**<br><br>Date: March 11, 2024<br>Courtroom 5D (5th Floor)<br>Hon. Linda Lopez<br><br>**PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................... ii

I.      INTRODUCTION ............................................................................ 1

II.     BACKGROUND ............................................................................... 2

III.    LEGAL STANDARD ....................................................................... 5

IV.     ARGUMENT ..................................................................................... 6

        A.    Section 1021.11 Is Unconstitutional ...................................... 6

        B.    Plaintiffs Are Likely To Succeed On Appeal Because The Court Erred
              In Dismissing The Case ........................................................ 9

              1.    Plaintiffs Have Standing To Bring This Case ............................. 9

              2.    This Case Is Ripe ................................................................... 15

              3.    All Defendants Are Properly Joined In This Action And The
                    Southern District Of California Is An Appropriate Venue ........ 15

        B.    Plaintiffs Will Be Irreparably Harmed Without An Injunction ............ 18

        C.    The Balance Of The Equities Favors An Injunction ............................. 20

        D.    The Court Should Waive Bond Or Require Only Nominal Security ... 21

V.      CONCLUSION ............................................................................... 22

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*ACLU v. Florida* Bar,
  999 F.2d 1486 (11th Cir. 1993) ................................................................ 15

4

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
  99 F. Supp. 3d 1110 (C.D. Cal. 2015) ...................................................... 17

5

*Am. Bev. Ass'n v. City & Cty. of San Francisco*,
  916 F.3d 749 (9th Cir. 2019) ............................................................ 19, 20

6

*Am. Trucking Ass'ns v. City of Los Angeles*,
  559 F.3d 1046 (9th Cir. 2009) .......................................................... 18, 20

7

*Ariz. Right to Life Political Action Comm. v. Bayless*,
  320 F.3d 1002 (9th Cir. 2003) .......................................................... 10, 15

8

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979) .................................................................................. 11

9

*Barahona-Gomez v. Reno*,
  167 F.3d 1228 (9th Cir. 1999) ................................................................. 21

10

*Bland v. Fessler*,
  88 F.3d 729 (9th Cir. 1996) ............................................................... 11, 12

11

*Brown v. Kemp*,
  86 F.4th 745 (7th Cir. 2023) .................................................................... 12

12

*Bryant v. Cal. Brewers Ass'n*,
  585 F.2d 421 (9th Cir. 1978) ................................................................... 17

13

*Bryant v. Woodall*,
  1 F.4th 280 (4th Cir. 2021) ...................................................................... 10

14

*Cal. Pharmacists Ass'n v. Maxwell-Jolly*,
  563 F.3d 847 (9th Cir. 2009) ................................................................... 20

15

*Cayuga Nation v. Tanner*,
  824 F.3d 321 (2d Cir. 2016) .................................................................... 10

16

*Cmty. House, Inc. v. City of Boise*,
  490 F.3d 1041 (9th Cir. 2007) ................................................................. 19

17

*Consumer Fin. Prot. Bureau v. Howard L., P.C.*,
  671 F. App'x 954 (9th Cir. 2016) ............................................................ 14

18

*Ctr. for Individual Freedom v. Madigan*,
  697 F.3d 464 (7th Cir. 2012) ................................................................... 12

19

*Deida v. City of Milwaukee*,
  192 F. Supp. 2d 899 (E.D. Wis. 2002) .................................................... 12

20

*Divxnetworks, Inc. v. Gericom AG*,
  2007 WL 4538623 (S.D. Cal. Dec. 19, 2007) ........................................... 6

21

*Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014) ............................................... 19

22

*Elrod v. Burns*, 427 U.S. 347 (1976) ........................................................... 18

23

*Ex Parte Young*,
  209 U.S. 123 (1908) .................................................................................. 15

24

25

26

27

28

*Feldman v. Ariz. Sec'y of State's Off.*,
  843 F.3d 366 (9th Cir. 2016) .................................................................................. 5

*Holder v. Humanitarian L. Project*,
  561 U.S. 1 (2010)............................................................................................... 11

*Hollingsworth v. Perry*,
  558 U.S. 183 (2010)........................................................................................... 6

*Idaho Bldg. & Const. Trades Council, AFL-CIO v. Wasden*,
  32 F. Supp. 3d 1143 (D. Idaho 2014) ..................................................... 15

*In re Primus*,
  436 U.S. 412 (1978)........................................................................................... 7

*Italian Colors Rest. v. Becerra*,
  878 F.3d 1165 (9th Cir. 2018) ................................................................. 10

*Jacobson v. Florida Secretary of State*,
  974 F.3d 1236 (11th Cir. 2020) ................................................................. 14

*League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*,
  558 F.2d 914 (9th Cir. 1977) .................................................................... 17

*Leiva-Perez v. Holder*,
  640 F.3d 962 (9th Cir. 2011) ...................................................................... 6

*Lopez v. Candaele*,
  630 F.3d 775 (9th Cir. 2010) ........................................................ 2, 12, 13, 14

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992).......................................................................................... 10

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) ..................................................................... 18

*Miller v. Bonta*,
  646 F. Supp. 3d 128 (S.D. Cal. 2022)............................................................ passim

*N.H. Right to Life Political Action Comm. v. Gardner*,
  99 F.3d 8 (1st Cir. 1996).................................................................................. 11

*Nat'l Ass'n for Advancement of Colored People v. Button*,
  371 U.S. 415 (1963).......................................................................................... 7

*Nat'l Wildlife Fed'n v. Espy*,
  45 F.3d 1337 (9th Cir. 1995) ...................................................................... 10

*Nken v. Holder*,
  556 U.S. 418 (2009)..................................................................................... 6, 20

*Nordlinger v. Hahn*,
  505 U.S. 1 (1992).............................................................................................. 8

*Preminger v. Principi*, 422 F.3d 815 (9th Cir. 2005)............................................. 20

*Protect Our Water v. Flowers*,
  377 F. Supp. 2d 882 (E.D. Cal. 2004)............................................................. 6

*Rodriguez v. Robbins*,
  715 F.3d 1127 (9th Cir. 2013) .................................................................... 21

*Save Our Sonoran, Inc. v. Flowers*,
  408 F.3d 1113 (9th Cir. 2005) .................................................................... 21

*Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*,
  472 F.3d 1097 (9th Cir. 2006) ...................................................................... 6

*Sierra Club v. Trump,*
  929 F.3d 670 (9th Cir. 2019) ............................................................ 6, 20

*South Bay Rod & Gun Club, Inc. v. Bonta,*
  646 F. Supp. 3d 1232 (S.D. Cal. 2022) ................................................... 6

*Tingley v. Ferguson,*
  47 F.4th 1055 (9th Cir. 2022) ............................................................ 9, 10

*Tweed-New Haven Airport Auth. v. Tong,*
  930 F.3d 65 (2d Cir. 2019) ...................................................................... 11

*United Mine Workers of Am. v. Gibbs,*
  383 U.S. 715(1966) ................................................................................. 17

*United States v. California,*
  921 F.3d 865 (9th Cir. 2019) ................................................................ 20

*United States v. Mississippi,*
  380 U.S. 128 (1965) ............................................................................... 16

*Virginia v. Am. Booksellers Ass'n, Inc.*
  484 U.S. 383 (1988) .................................................................................. 9

*Zepeda v. U.S. I.N.S.,*
  753 F.2d 719 (9th Cir. 1983) ................................................................ 21

**Statutes**

Cal. Code Civ. Proc. § 1021.11(d)(3) ........................................................ 7

**Other Authorities**

Jonathan F. Mitchell, *The Writ of Erasure Fallacy,*
  104 Va. L. Rev. 933 (2018) .................................................................. 14

**Rules**

Fed. R. Civ. P. 20(a)(2) ............................................................................ 15

Fed. R. Civ. P. 62(c) .................................................................................. 5

Fed. R. Civ. P. 65(c) ................................................................................ 21

**Treatises**

7 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1652 (3d ed.) .. 16

7 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1653 (3d ed.) ............................................................................................ 17

7 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1657 (3d ed.) ............................................................................................ 16

# I. INTRODUCTION

California Code of Civil Procedure section 1021.11 is an unconstitutional attempt by the State of California to insulate California's gun laws from Second Amendment challenge by imposing a draconian, one-way fee-shifting penalty to deter individuals and organizations from accessing the courts to litigate claims over firearms regulations. In *Miller v. Bonta*, this Court enjoined the State from enforcing Section 1021.11, and held that the statute was unconstitutional in multiple respects. 646 F. Supp. 3d 128 (S.D. Cal. 2022).

Plaintiffs have standing to bring Second Amendment claims against each of the local jurisdiction Defendants in this case. Because these Defendants are not directly bound by *Miller*'s injunction, they could invoke Section 1021.11 against parties who challenge their firearms regulations. Before this litigation, Defendants refused to stipulate to non-enforcement of Section 1021.11 in the cases Plaintiffs would file against them. And Defendants conspicuously refused to disavow enforcement of the law in responding to the Court's Order to Show Cause.

The Court allowed Defendants to continue having the best of both worlds by dismissing this case for lack of standing, while leaving Plaintiffs in the same state they were in before the case—unable to bring the underlying cases out of fear that Defendants would, in fact, attempt to enforce the statute. Because the threat of its enforcement is so pernicious to individuals and organizations (and their attorneys) unable to bear the financial risk, Section 1021.11's chilling effect prevails, and Defendants remain happily shielded from firearms litigation by a law that no one in this litigation has claimed is constitutional.

The Court's dismissal order was wrong and perpetuates Plaintiffs' injuries by leaving them in this state of limbo. To begin with, the Court failed to apply the correct legal standard, which requires that Plaintiffs' allegations of harm be taken as true and construed in their favor. Setting that aside, Plaintiffs presented substantial evidence in support of their preliminary injunction motion: (1) identifying the substantive Second

Amendment claims they would bring; (2) showing each Defendant's retention of the right to enforce Section 1021.11 in such litigation; and (3) demonstrating how these responses have caused Plaintiffs to refrain from initiating the litigation. This was an ample showing, since courts generally *presume* that defendants will enforce newly enacted statutes like Section 1021.11. Moreover, courts consistently permit pre-enforcement First Amendment challenges when the government, as here, refuses to disavow enforcement of an allegedly unconstitutional statute. In sum, Plaintiffs have shown "an actual or imminent injury to a legally protected interest" that is not only "credible," it is concrete and ongoing. *Lopez v. Candaele*, 630 F.3d 775, 785–86 (9th Cir. 2010).

Plaintiffs are irreparably harmed by Section 1021.11, which deprives them of the access to the courts that is essential to vindicate their constitutional rights. The Court should enter an injunction pending Plaintiffs' appeal and enjoin Defendants from enforcing or applying the fee-shifting penalty set forth in California Code of Civil Procedure section 1021.11 in firearms litigation initiated by Plaintiffs.

## II. BACKGROUND

Section 10211.11's fee-shifting regime has infringed on Plaintiffs' constitutional rights by depriving them of access to courts. As detailed in *Miller*, 643 F. Supp. 3d 1087 (S.D. Cal. 2022), Section 1021.11 unconstitutionally chills Plaintiffs' ability to bring and continue to prosecute civil rights cases challenging California firearm regulations. Section 1021.11 also purports to allow local jurisdictions to enforce its onerous terms when they are sued in challenges to their firearm regulations. Plaintiffs here are prepared to sue each of the Defendants for local regulations that violate the Second Amendment. But Defendants were not parties to *Miller*, so as a matter of black-letter law they are not bound by its injunction.

After the *Miller* ruling, Plaintiffs FPC and CGF asked Defendants to stipulate that they would not enforce Section 10211.11, either in a current case or a case that Plaintiffs intend to file. Each Defendant refused, either affirmatively or by declining

to respond. *See* ECF No. 1, Complaint, ¶¶ 46–55; ECF No. 20-1, Prelim. Inj. Br., 5:18–8:12 (detailing Plaintiffs' non-enforcement requests to each Defendant).

Specifically, Defendants responded as follows:

*County of Imperial*. Counsel for FPC sent a letter to the Office of the County Counsel for Imperial County asking that it stipulate not to enforce Section 1021.11 in a case it intends to file challenging the constitutionality of a county ordinance prohibiting the possession of firearms in any recreational park. Imperial County did not respond. ECF No. 20-6, Benbrook Decl., ¶ 4 & Ex. 2.

*City of San Diego*. Counsel for the plaintiffs (which include FPC and SDCGO) in the pending case of *Fahr v. City of San Diego*, S.D. Cal. Case No. 3:21-cv-01676-BAS-BGS, sent a letter to the San Diego City Attorney asking that it stipulate not to enforce Section 1021.11 against the plaintiffs or their attorneys based on the outcome of the case. The City Attorney's office responded that "the City is not in a position to stipulate as requested," and that it did "not believe" that the Court's decision in *Miller* "warrants an unequivocal waiver from the City." ECF No. 20-5, DiGuiseppe Decl., ¶¶ 2–4 & Ex. 1.

*County of Alameda*. Counsel for FPC sent a letter to the Office of the County Counsel for Alameda County asking that it stipulate not to enforce Section 1021.11 in a case it intends to file challenging the constitutionality of the Alameda County Sherriff's Office's application and enforcement of the County's licensing regime for carrying concealed firearms. ECF No. 20-7, Lee Decl., ¶ 3 & Ex. 4. Alameda County Counsel responded by letter that it would not agree to non-enforcement. The County further suggested that Plaintiffs' counsel were in potential breach of ethical obligations and "encouraged" counsel to "be mindful of your duties obligations [sic] before you make averments in any pleading regarding the intentions of the Sheriff and the County" regarding Section 1021.11. ECF No. 20-7, Lee Decl., ¶ 3 & Ex. 4.

*County of Ventura*. Counsel for FPC sent a letter to the Office of the County Counsel for Ventura County asking that it stipulate not to enforce Section 1021.11

against the intended plaintiffs or their attorneys and law firms in a case it intends to file challenging the constitutionality of the Ventura County sheriff's application and enforcement of the County's licensing regime for carrying concealed firearms. Ventura County did not respond. ECF No. 20-6, Benbrook Decl., ¶ 5 & Ex. 5.

*County of Los Angeles*. Counsel for FPC sent a letter to the Office of the County Counsel for Los Angeles County asking that it stipulate not to enforce Section 1021.11 in a case it intends to file challenging the constitutionality of (1) the Los Angeles County Sheriff's Office's application and enforcement of the County's licensing regime for carrying concealed firearms; and (2) a provision of the county code prohibiting the possession of firearms in any public park within the county's jurisdiction. County Counsel responded by letter that it would not agree to non-enforcement, but that it "would be willing to discuss entering into a case-specific situation." ECF No. 20-6, Benbrook Decl., ¶ 6 & Exs. 6, 7.

*City of San Jose*. Counsel for FPC sent a letter to counsel for the City of San Jose asking that the city stipulate not to enforce Section 1021.11 against the intended plaintiffs or their attorneys and law firms in a case it intends to re-file challenging the constitutionality of city ordinances requiring firearm owners to pay an annual fee to a City-designated non-profit organization and obtain firearm-related insurance. FPC had previously sued to invalidate those same regulations, but dismissed the lawsuit in August 2022 specifically because of the threat posed by Section 1021.11. *Glass v. City of San Jose*, N.D. Cal. Case No 5:22-cv-02533-BL. FPC is prepared to re-file this challenge against San Jose once it is enjoined from attempting to enforce Section 1021.11. ECF No. 20-6, Benbrook Decl., ¶ 7 & Ex. 8; ECF No. 20-2, Combs Decl., ¶ 13; ECF No. 20-3, Hoffman Decl., ¶ 10. Counsel for San Jose responded by letter that it would not agree to non-enforcement, claiming that it was "inappropriate to respond" outside of the context of an actual lawsuit. ECF No. 20-6, Benbrook Decl., ¶ 7 & Ex. 9. Counsel "decline[d] to comment on what positions the City might take, or what remedies it might seek, in hypothetical future litigation against the City." *Id.*

*Santa Clara County*. Counsel for FPC and CGF sent a letter to the Office of the County Counsel for the County of Santa Clara asking that it stipulate not to enforce Section 1021.11 against the intended plaintiffs or their attorneys and law firms in a case they intend to file challenging the constitutionality of the Santa Clara County Sherriff's Office's application and enforcement of the County's licensing regime for carrying concealed firearms. Santa Clara County never responded. ECF No. 20-6, Benbrook Decl., ¶ 8 & Ex. 10.

On March 2, 2023, Plaintiffs filed this lawsuit seeking declaratory and injunctive relief preventing Defendants from relying on Section 1021.11 in firearms litigation against them. Twelve days later, on March 14, 2023, the Court issued an Order to Show Cause directing Plaintiffs to explain why the case should not be dismissed for lack of standing, ripeness, improper venue, and joinder. ECF No. 18. More than eight months after the OSC was fully briefed, on January 9, 2024, the Court issued an Order dismissing Plaintiffs' complaint, ECF No. 56, along with a judgment of dismissal, ECF No. 57.

Plaintiffs have filed a notice of appeal, ECF No. 58, and now file this motion for an injunction pending appeal.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 62(c) allows a court to issue an injunction pending appeal of an order or final judgment "that grants, dissolves, or denies an injunction." Fed. R. Civ. P. 62(c). "The standard for evaluating an injunction pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction." *Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 367 (9th Cir. 2016). Courts consider the following four factors: "(1) whether the [injunction] applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a [injunction]; (3) whether issuance of the [injunction] will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Sierra Club v. Trump*, 929 F.3d

670, 687 (9th Cir. 2019) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). In short, "[i]n deciding whether to grant an injunction pending appeal, the court balances the plaintiff's likelihood of success against the relative hardship to the parties." *Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1100 (9th Cir. 2006) (internal quotation marks and citation omitted).[1]

## IV.  ARGUMENT

### A.   Section 1021.11 Is Unconstitutional.

At the outset, there is no doubt that Plaintiffs will succeed on the merits of their underlying constitutional challenge to Section 1021.11. The State is enjoined from enforcing Section 1021.11 under *Miller v. Bonta*. 646 F. Supp. 3d 128 (S.D. Cal. 2022).[2] The Court in *Miller* found that Section 1021.11 violates the First Amendment, is preempted under the Supremacy Clause by 42 U.S.C. § 1988, and violates the Equal Protection and Due Process Clauses. Plaintiffs briefed these matters in full in their Motion for Preliminary Injunction Or, Alternatively, For Summary Judgment. ECF No. 20-1, at 11:9–19:11. We reiterate the core points of the constitutional analysis below because it bears on the necessity for an injunction pending appeal.

*First Amendment*. Section 1021.11 encourages state and local governments to push the constitutional envelope when crafting firearms regulations by threatening would-be plaintiffs who might challenge those regulations with a potentially ruinous fee award. As the Court observed in *Miller*, "[t]he principal defect of § 1021.11 is that it threatens to financially punish plaintiffs and their attorneys who seek judicial review

---

[1]   In the similar context of considering a stay pending appeal, the moving party "need not demonstrate that it is more likely than not they will win on the merits," but rather must show "a reasonable probability" or "fair prospect" of success. *Leiva-Perez v. Holder*, 640 F.3d 962, 966–67 (9th Cir. 2011) (quoting in part *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010)). Thus, "[c]ourts do not rigidly apply the success on the merits factor because a rigid application would require the district court 'to conclude that it was probably incorrect in its determination on the merits.'" *Divxnetworks, Inc. v. Gericom AG*, 2007 WL 4538623, at *3 (S.D. Cal. Dec. 19, 2007) (quoting *Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004)).

[2]   The Court issued a substantively identical ruling in a related case. *South Bay Rod & Gun Club, Inc. v. Bonta*, 646 F. Supp. 3d 1232 (S.D. Cal. 2022).

of laws impinging on federal constitutional rights." 646 F. Supp. 3d at 1237. "Laws like § 1021.11 that exact an unaffordable price to be heard in a court of law are intolerable." *Id.* at 1238. And the threat posed by Section 1021.11 extends beyond imposing financial ruin on would-be plaintiffs: the law imposes the same threat of fee liability on plaintiffs' attorneys and their law firms. The *Miller* Court recognized that this scheme "does a disservice to the courts" through suppressing "novel," "substantial" claims, thereby "threaten[ing] severe impairment of the judicial function" by "insulat[ing] the Government's laws from judicial inquiry." *Id.* at 1240 (citations omitted).

Section 1021.11's obvious and impermissible purpose is to give state and local governments in California a free hand to regulate firearms by suppressing litigation over firearm regulations. Just as with prior attempts in our Nation's history to suppress disfavored civil rights litigation, *see, e.g.*, *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415 (1963); *In re Primus*, 436 U.S. 412 (1978), Section 1021.11 improperly burdens the right of access to the courts. In short, and as the *Miller* court has already found, Section 1021.11's fee-shifting penalty violates the First Amendment.

*Supremacy Clause*. Section 1021.11 directly conflicts with 42 U.S.C. § 1988 by establishing a wholly separate state law fee regime in federal civil rights litigation. Indeed, Section 1021.11 asserts supremacy over federal law. The statute remarkably asserts that its fee-shifting provision applies regardless of what any federal court does in an underlying Section 1983 case: Section 1021.11 pronounces that government officials may plow ahead with enforcing the fee-shifting penalty against a Section 1983 plaintiff with a state court collection action even when "*[t]he court in the underlying action held that any provision of this section is invalid, unconstitutional, or preempted by federal law*, notwithstanding the doctrines of issue or claim preclusion." Cal. Code Civ. Proc. § 1021.11(d)(3) (emphasis added). As the *Miller* Court observed, "[t]hrough its unfair legal stratagems, the state law chills the First

1   Amendment right to petition government for the redress of grievances, which, in turn,

2   chills the Sec ond Amendment right. The chill is deepened by the extraordinary

3   provision that declares a plaintiff shall not be a prevailing party. In the end, this state

4   statute undercuts and attempts to nullify 42 U.S.C. § 1988." 646 F. Supp. 3d at 1241.

5   Not only does "California's fee shifting provision turns [the federal] approach upside

6   down," but "California attorney's fee-shifting construct goes beyond § 1988 by

7   discouraging attorneys from representing civil rights plaintiffs." *Id.* at 1242. And

8   because Section 1021.11 "will have the effect of thwarting federal court orders

9   enforcing Second Amendment rights through § 1988 attorney's fee awards," the

10  statute "cannot survive." *Id.* at 1243.

11         *Equal Protection and Due Process Clauses*. A law also cannot baselessly

12  discriminate against the exercise of a constitutional right without violating the Equal

13  Protection Clause. *See, e.g.*, *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). In all the ways

14  described above, Section 1021.11 discriminates against federal constitutional rights,

15  against firearm rights plaintiffs in particular, and on the basis of viewpoint. As the

16  *Miller* Court held, therefore, Section 1021.11 also violates the Equal Protection

17  Clause. Indeed, while such discrimination against those who seek to exercise First and

18  Second Amendment rights would be subject to, and plainly fail, strict scrutiny, the

19  classifications at issue here could not even survive rational basis scrutiny as explained

20  above. "Where money determines not merely 'the kind of trial a man gets,' but

21  whether he gets into court at all," the *Miller* Court explained, "the great principle of

22  equal protection becomes a mockery." 646 F. Supp. 3d at 1239 (citation omitted).

23         The *Miller* Court further explained that due process separately "requires that a

24  citizen be able to be heard in court" and thus that, "[w]here the financial cost is too

25  high to enable a person to access the courts," there is also a violation of the Due

26  Process Clause. *Id.* at 1238. Simply put, "[l]aws like § 1021.11 that exact an

27  unaffordable price to be heard in a court of law are intolerable." *Id.*

28

\* \* \*

Section 1021.11 is unconstitutional, and its lingering threat of enforcement by the named Defendants is actively infringing on Plaintiffs' right to access the courts. Defendants have failed to even suggest that the law is constitutional, let alone defend it.

**B.   Plaintiffs Are Likely To Succeed On Appeal Because The Court Erred In Dismissing The Case.**

**1.   Plaintiffs Have Standing To Bring This Case.**

As Plaintiffs detailed in their complaint and preliminary injunction briefing, but for Section 1021.11's fee-shifting provisions, Plaintiffs would forthwith engage in firearms litigation against Defendants, but they have refrained from bringing these suits due to the law's threat of ruinous fee liability. Plaintiffs never would have brought this case—and the Court's ruling would have been manifestly correct—if Defendants simply confirmed they would not seek to enforce Section 1021.11 when Plaintiffs filed their Second Amendment cases. Defendants refused to do so, thereby holding the obvious prospect of enforcing the onerous statue over Plaintiffs' heads, which, in turn, has resulted in the unconstitutional deterrence of Plaintiffs' petitioning rights.

Bedrock First Amendment principles confirm that Plaintiffs have standing to sue to redress this constitutional injury. "[S]elf-censorship" is a sufficient Article III injury "even without an actual prosecution." *Virginia v. Am. Booksellers Ass'n, Inc.* 484 U.S. 383, 393 (1988); *see also, e.g.*, *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022) ("We have held that a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." (internal quotation marks omitted)). In that light, Plaintiffs have suffered a clear First Amendment injury: they wish to engage in conduct protected by the First Amendment but within Section 1021.11's reach, and their constitutional rights to engage in that conduct have been chilled by the statute. *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1171–73 (9th

Cir. 2018) (detailing standard for pre-enforcement challenge based on chilled First Amendment activity); *Tingley*, 47 F.4th at 1066–67 (the "unique standing considerations in the First Amendment context," where "the Supreme Court has dispensed with rigid standing requirements" and where chilled conduct is "a constitutionally sufficient injury," "tilt dramatically" in favor of pre-enforcement standing) (cleaned up). In short, Plaintiffs have suffered injury by being "forced to modify [their] speech and behavior to comply with" Section 1021.11. *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) ("*ARLPAC*").

Despite this, the Court held that Plaintiffs have not shown an "actual or imminent injury" based on its conclusion that they provided "no concrete evidence that Defendants plan to enforce Section 1021.11." ECF No. 56, Order Dismissing Case, at 6:2–4. To start with, this conflicts with the standard governing standing at the pleading stage, where Plaintiffs' allegations of harm must be "taken as true" by the Court and "construed in the light most favorable" to Plaintiffs. *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995); *see also, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice [to establish standing], for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'") (citation omitted).

Plaintiffs did not bear the burden of alleging a "concrete . . . plan to enforce" the statute. To the contrary, the Court's order ignores the *presumption* that Defendants *will* enforce the statute if Plaintiffs file the intended lawsuits and fail to prevail on every claim. *Cf. Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) ("Courts are generally 'willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund.'") (citation omitted); *Bryant v. Woodall*, 1 F.4th 280, 286 (4th Cir. 2021) ("[L]aws that are 'recent and not moribund' typically do present a credible threat [of enforcement]. This is because a court

presumes that a legislature enacts a statute with the intent that it be enforced.")
(citations omitted). Particularly for "recently enacted" statutes, "courts will assume a
credible threat of prosecution in the absence of compelling contrary evidence." *N.H.
Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996). Put
simply, "[w]here a statute specifically proscribes conduct, the law of standing does
not place the burden on the plaintiff to show an intent by the government to enforce
the law against it." *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir.
2019) (internal quotation marks and citation omitted).

   Thus, pre-enforcement challenges to statutes that chill First Amendment
activity are justiciable when, as here, the government retains the *option* of enforcing
an allegedly unconstitutional statute and has not disavowed it. In *Babbitt v. United
Farm Workers Nat'l Union*, 442 U.S. 289 (1979), the Supreme Court rejected the
argument, similar to Defendants' here, that a pre-enforcement First Amendment
challenge wasn't justiciable because statute "has not yet been applied and may never
be applied." *Id*. at 302. Where, as here, the government actor with authority to enforce
the statute "has not disavowed any intention of invoking" the law, the plaintiff's "fear"
of prosecution under the "allegedly unconstitutional statute is not imaginary or wholly
speculative," and they have standing to enjoin its enforcement. *Id*.; *see also Holder v.
Humanitarian L. Project*, 561 U.S. 1, 16 (2010) (allowing pre-enforcement First
Amendment challenge and noting "[t]he Government has not argued to this Court that
plaintiffs will not be prosecuted if they do what they say they wish to do").

   In *Bland v. Fessler*, 88 F.3d 729 (9th Cir. 1996), for example, plaintiff brought
a pre-enforcement challenge to a law that imposed civil penalties for making
automated phone calls. Plaintiff self-censored by no longer making such calls in light
of the "cloud" imposed by the prospect of facing penalties. *Id*. at 737. When the
Attorney General stressed that its office had never enforced the statute, the court
responded that the Attorney General had also "not stated affirmatively that his office
will not enforce the civil statute." *Id*. And it went on to reject the government's

effort—similar to Defendants' effort here—to defeat standing with lesser assurances: "It is true that [a senior member of the Attorney General's office] declared that the Attorney General's office 'has not brought or indicated that it would bring any action' under the civil statute. However, *this is far short of a disavowal of enforcement*. There is little comfort in these words for" a plaintiff facing potential enforcement. *Id*. at 737 n.12 (emphasis added); *see also Brown v. Kemp*, 86 F.4th 745, 769 (7th Cir. 2023) (holding that "the absence of a clear disavowal" supports standing, and that plaintiffs had a "credible fear" of enforcement where there was not "a clear or widespread disavowal [from the government] that would remove the threat of liability for plaintiffs"); *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 475 (7th Cir. 2012) (finding that plaintiffs had pre-enforcement standing based on self-censorship when government enforcers "have not denied that" plaintiffs' conduct fell within a statute's reach); *Lopez*, 630 F.3d at 788 ("Of course, the government's disavowal must be more than a mere litigation position.").[3]

The dismissal Order here flouts these principles. Indeed, the Order asserts that Plaintiffs' reliance on such principles "effectively puts the burden on Defendants to establish that there is no standing." Order at 5:5–6. Plaintiffs always bear the burden of showing standing, and Plaintiffs made the necessary showing here. The cases outlined above demonstrate that Defendants can *rebut* Plaintiffs' showing with "compelling contrary evidence" of a threat of enforcement—such as an express disavowal of any intention to enforce the statute.

That did not happen here. Defendants' oblique statements conspicuously stopped short of closing the door on enforcing the statute in the future. *See, e.g.*, ECF No. 30, County of Imperial OSC Response, at 3:12–6:14 (arguing that Plaintiffs

---

[3]    "Disavowal of [a] statute requires that the state do more than say during the litigation that it might never prosecute plaintiff, [citation], or that it does not intend to prosecute plaintiff, [citation]. In order to disavow the statute, the state must instead take some affirmative step against enforcement." *Deida v. City of Milwaukee*, 192 F. Supp. 2d 899, 906 (E.D. Wis. 2002).

lacked standing "because Defendants have never signaled any intent to enforce or apply the state statute," and that "there is no legitimate risk that any entity would seek to invoke Section 1021.11"); ECF No. 33, County of Alameda OSC Response, at 8:25–9:2 (arguing that the *Miller* injunction "effectively discourages anyone . . . from even attempting to invoke Section 1021.11"). Prior to filing this motion for injunction pending appeal, Plaintiffs asked Defendants' counsel to state whether they would "oppose the motion or if they instead are now willing to disavow enforcement of Section 1021.11 (after obtaining a dismissal based on the representation that there was 'no legitimate risk' of its enforcement) and thereby obviate the need for further litigation." Benbrook Decl., ¶ 7 & Ex. 3. The request to meet and confer was met with silence. *Id.*, ¶ 8.

Defendants' responses to Plaintiffs' non-enforcement requests, their briefing on the OSC, and their post-dismissal silence all demonstrate a *refusal* to disavow any intent to enforce Section 1021.11, so Plaintiffs' showing is unrebutted under *Babbit*, *Bland*, and the many cases requiring a disavowal. As it stands now, Defendants have retained the option of enforcing the law, and Defendants are content to continue taking advantage of the statute's chilling effect to shield them from litigation.

The Order also rejects Plaintiffs' reliance on *Lopez* by noting its statement of the rule that, despite the First Amendment's relaxed standing requirement, "plaintiffs must still show an actual or imminent injury to a legally protected interest." Order at 5:14–15 (quoting *Lopez*, 630 F.3d at 785). *Lopez*'s radically different facts demonstrate why Plaintiffs have standing here. In *Lopez*, a college student alleged that his religious speech about gay marriage during class would subject him to punishment under the school's sexual harassment policy. Unlike here, where there is no dispute a Second Amendment lawsuit against any of the Defendants would bring Plaintiffs within Section 1021.11, the Ninth Circuit concluded that plaintiff "has not shown that the sexual harassment policy even arguably applies to his past or intended future speech." 630 F.3d. at 790. Even though the speech was not punishable by the policy

under which plaintiff claimed to fear enforcement, the court went on to (1) discuss multiple cases stating the rule that defendants can defeat standing by disavowing an intention to enforce, *id*. at 788; (2) note that the college *had* "disavowed" the one time a teacher admonished the student, *id*. at 784; and (3) observe that the official with enforcement power stated in writing that "no action will be taken against students for expressing their opinions" in the manner that plaintiff did. *Id*. at 791–92. Thus, unlike here, the plaintiff's fear of enforcement in *Lopez* was properly rejected as imaginary or speculative.

Finally, the Order appears to suggest that Defendants are not properly named since Section 1021.11 is a state statute. Order at 4:11–5:2. Yet no one disputes that Section 1021.11 expressly grants Defendants independent enforcement authority and discretion to seek fees in firearms litigation brought against their jurisdictions. And there is no plausible argument that the Defendants here are bound by the *Miller* injunction. The Defendants were not parties to *Miller*, and they are in no way under the supervision or control of the entities who were parties in *Miller*. *See Jacobson v. Florida Secretary of State*, 974 F.3d 1236, 1255 (11th Cir. 2020) (explaining that courts lack authority to enjoin non-parties who are not "in active concert" with defendants); *Consumer Fin. Prot. Bureau v. Howard L., P.C.*, 671 F. App'x 954, 955 (9th Cir. 2016) ("An injunction binds a non-party only if it has actual notice, and either 'abet[s] the [enjoined party]' in violating the injunction, or is 'legally identified' with the enjoined party.") (citations omitted); *see generally* Jonathan F. Mitchell, *The Writ of Erasure Fallacy*, 104 Va. L. Rev. 933 (2018). And the *Miller* injunction does not purport to bind anyone beyond the State actors identified in the ruling. 646 F. Supp. 3d at 1232 (enjoining the Governor and Attorney General, along with "their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, and those who gain knowledge of this injunction order or know of the existence of this injunction order").

The Order cites *Idaho Bldg. & Const. Trades Council, AFL-CIO v. Wasden*, 32 F. Supp. 3d 1143, 1148 (D. Idaho 2014), for the proposition that, "in an action where a plaintiff challenges the constitutionality of a state statute, the proper defendant is the state official designated to enforce the rule," Order at 4:13–15, but that discussion arose in the court's Eleventh Amendment analysis under *Ex Parte Young*, 209 U.S. 123 (1908), not its standing analysis. Thus, *Ex Parte Young*'s statement that a state defendant "must have some connection with the enforcement of the act" being challenged in order to avoid the Eleventh Amendment's bar on suing a state in federal court, 209 U.S. at 157, has nothing to do with this case. Here, in any event, the Defendants all have the closest possible "connection" to enforcing Section 1021.11: the statute gives them the right to do so.[4]

In sum, Plaintiffs have standing to bring this challenge against Defendants.

## 2. This Case Is Ripe.

Plaintiffs' active and ongoing constitutional injury creates a ripe claim. When this suit was filed, Plaintiffs had already suffered a cognizable injury: they were forced to dismiss or refrain from bringing constitutional challenges to Defendants' firearm regulations because Defendants had not agreed to refrain from enforcing Section 1021.11. The fact that plaintiffs have "suffered actual harm dispenses with any ripeness concerns." *ARLPAC*, 320 F.3d at 1007 n.6.

## 3. All Defendants Are Properly Joined In This Action And The Southern District Of California Is An Appropriate Venue.

Under Rule 20, defendants may be joined in an action if "any right to relief is asserted . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and "any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2). This case raises only a

---

[4] The Order's citation to *ACLU v. Florida* Bar, 999 F.2d 1486 (11th Cir. 1993), is similarly beside the point. The Florida Bar claimed it had no enforcement authority over the plaintiff in that case, and the court rejected the argument. *Id* at 1489. No one disputes that the Defendants here are "designated to enforce" Section 1021.11. *Id*.

question of law, and that question is common to all Defendants: namely, whether the Federal Constitution permits any Defendant to seek attorneys' fees from any Plaintiffs or Plaintiffs' attorneys under Section 1021.11. The Court's conclusion that Plaintiffs' claims arise out of "distinct transactions or occurrences" with each Defendant was error. Order Dismissing Case, at 7:20–8:4. While it is true that Plaintiffs sent each Defendant a separate non-enforcement letter and each Defendant's response varied, the underlying legal claim against each Defendant is identical. There is no material factual distinction between the claims that Plaintiffs assert against each Defendant.

The Court's dismissal order flouts core considerations guiding the exercise of discretion under Rule 20 to protect litigants' rights and promote judicial economy. In civil-rights cases, like this one, "predicated on federal statutes and the United States Constitution," courts frequently "have relied upon Rule 20 to sustain the joinder of defendants." 7 CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 1657 (3d ed.) ("WRIGHT & MILLER"). After all, "[t]he purpose of the rule is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits," goals that become only more imperative when fundamental rights are at stake, as they are here. *Id*. § 1652.

Thus, in *United States v. Mississippi*, the Supreme Court held that six county registrars, three of whom resided outside the district where the suit was initiated, were properly joined in the action because the complaint alleged "a state-wide system designed to enforce the registration laws in a way that would inevitably deprive" minority citizens their voting rights—even though the Court cited no allegations that the defendant registrars acted in concert with one another in any particular instance. 380 U.S. 128, 142 (1965). Similarly, in *Bryant v. California Brewers Association*, where the plaintiff challenged a collective-bargaining agreement for the State's brewery industry on the ground that it deprived him of valuable employment status based on his race, the Ninth Circuit held that breweries where the plaintiff had "neither worked nor sought to work" were properly joined merely because they were

1   "signatories to the statewide collective bargaining agreement and, as such, support
2   and maintain the disputed contract provisions." 585 F.2d 421, 425 (9th Cir. 1978),
3   *vacated on other grounds*, 444 U.S. 598 (1980). More recently in the ERISA context,
4   the Central District held that 422 separate defendants were properly joined even
5   though the claims against them arose from more than 400 separate retirement plans
6   and, as they contended, "from thousands of independent and unique" transactions.
7   *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d
8   1110, 1188 (C.D. Cal. 2015). Recognizing that, "strictly speaking," each claim
9   "implicate[d] a different 'transaction' of sorts," the Court did "not believe the
10  [complaint] should be read so narrowly." *Id*. "Rather, each discrete claim [was] part
11  of the larger systematic behavior alleged" and thus arose "out of the same series of
12  transactions or occurrences." *Id*.

13      These cases illustrate the Supreme Court's observation that, "[u]nder the Rules,
14  the impulse is toward entertaining the broadest possible scope of action consistent
15  with fairness to the parties; joinder of claims, parties and remedies is strongly
16  encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Simply
17  put, Rule 20 "is to be construed liberally in order to promote trial convenience and to
18  expedite the final determination of disputes, thereby preventing multiple lawsuits."
19  *League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 558 F.2d 914, 917 (9th Cir.
20  1977); *see also* WRIGHT & MILLER § 1653 ("The transaction and common-question
21  requirements prescribed by Rule 20(a) are not rigid tests. They are flexible concepts
22  used by the courts to implement the purpose of Rule 20 and therefore are to be read
23  as broadly as possible whenever doing so is likely to promote judicial economy.").

24      Joinder is as appropriate here as it was in *Mississippi*, *Bryant*, and *Almont*. The
25  claims in this case are predicated on fundamental civil rights and call for expeditious
26  resolution. As the cases above show, Rule 20's "flexible" provisions do not require a
27  plaintiff to allege that all defendants acted in concert when rights are deprived
28  systematically and state-wide. WRIGHT & MILLER § 1653. And the claims against all

Defendants arise from a single law that is explicitly aimed at firearm owners and advocacy groups throughout the State. As a result, the claims against all Defendants will involve "overlapping proof," another widely accepted indication that they "arise out of the same transaction or occurrence." *Id.*

Finally, venue is proper in this District. Under 28 U.S.C. § 1391(b)(1), a "civil action may be brought in a judicial district in which *any defendant* resides, if all defendants are residents of the State in which the district is located" (emphasis added). Venue is proper in the first instance because the City of San Diego and the County of Imperial both reside here. And because the remaining Defendant entities all reside in California this District is a proper venue for them as well.

## B. Plaintiffs Will Be Irreparably Harmed Without An Injunction.

Plaintiffs are irreparably harmed by Section 1021.11, which imposes a severe burden on their right of access to the courts and deprives them of the full opportunity to vindicate their Second Amendment rights. As the Supreme Court and the Ninth Circuit have repeatedly emphasized, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam) ("[T]he loss of First Amendment freedoms, for even minimal periods of time, 'unquestionably constitutes irreparable injury.'") (citation omitted). Because "constitutional violations cannot be adequately remedied through damages [such violations] therefore generally constitute irreparable harm." *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1059 (9th Cir. 2009) (citation omitted).

The constitutional violations manifested in Section 1021.11 have caused concrete harm to Plaintiffs here. Plaintiffs demonstrated in the prior briefing how the cloud imposed by Section 1021.11 has caused Plaintiffs to dismiss or refrain from bringing lawsuits challenging Defendants' firearms regulations that they believe are unconstitutional. In the nine months that have passed since Plaintiffs filed their motion

for a preliminary injunction, FPC has been contacted by more individuals who have potential separate claims against Defendants in this case, and, but for Section 1021.11, FPC would have pursued multiple of those potential claims. Combs Decl. ISO Motion for Injunction Pending Appeal, ¶ 3. FPC exists in large part to assert these claims. *Id.* But FPC and Plaintiffs remain unable to exercise their First Amendment rights to assert Second Amendment claims in court. These significant and ongoing injuries far exceed the Ninth Circuit's baseline for establishing irreparable harm in a constitutional context. *See Am. Bev. Ass'n v. City & Cty. of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) ("Because Plaintiffs have a colorable First Amendment claim, they have demonstrated that they likely will suffer irreparable harm if the Ordinance takes effect.") (citing *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014)); *accord Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007).

One recent example is worth highlighting to show the perverse effects of the Court's ruling. FPC has incurred fees to prepare a lawsuit challenging the constitutionality of California's laws imposing a residency requirement for obtaining a license to carry a concealed firearm, set forth in California Penal Code §§ 26150(a)(3) and 26155(a)(3). Combs Decl., ¶ 4. The individual plaintiff in the case would seek licensure from San Diego County, so the County may also be named in any such suit. Penal Code § 26150(b). As in this case, counsel for FPC sent San Diego County a letter asking it to stipulate to non-enforcement of Section 1021.11. Benbrook Decl. ISO Mot. for Injunction Pending Appeal, ¶ 4 & Ex. 1. The San Diego County Counsel's office would only commit to non-enforcement "unless and until an appellate court rules in a published decision that the statute is constitutional." *Id.*, ¶ 5 & Ex. 2. Although the Deputy County Counsel advised by phone that he thought the law was "probably unconstitutional," his office expressly reserved the "right to seek all available fees and costs from litigation" if the law were later upheld. *Id.*, ¶ 6. Despite this non-disavowal under *Babbit* and *Bland*, County Counsel asserted that any

1  suit to challenge the County's position "would not be ripe and subject to dismissal for

2  lack [of] standing." *Id*.

3        Now that local jurisdictions get the message that all they have to do to avoid a

4  lawsuit is not respond or give qualified statements about their intent to enforce Section

5  1021.11, Plaintiffs face perpetual limbo. This is irreparable harm.

6  **C.    The Balance Of The Equities Favors An Injunction.**

7        The third and fourth factors— "harm to the opposing party and weighing the

8  public interest"—"merge when the Government is the opposing party." *Sierra Club*,

9  929 F.3d at 708 (quoting *Nken*, 556 U.S. at 435). Both factors favor an injunction.

10       At a fundamental level, "it is always in the public interest to prevent the

11 violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (citation

12 omitted); *accord Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005)

13 ("Generally, public interest concerns are implicated when a constitutional right has

14 been violated, because all citizens have a stake in upholding the Constitution."). This

15 balance tips overwhelmingly in Plaintiffs' favor given the significant First

16 Amendment interests at stake. *See Am. Bev. Ass'n*, 916 F.3d at 758 ("[T]he fact that

17 [Plaintiffs] have raised serious First Amendment questions compels a finding that . . .

18 the balance of hardships tips sharply in [Plaintiffs'] favor," and "we have consistently

19 recognized the significant public interest in upholding First Amendment principles.")

20 (internal quotation marks and citations omitted). Likewise, as the Ninth Circuit has

21 put it, "it is clear that it would not be equitable or in the public's interest to allow"

22 violations of "the requirements of federal law, especially when there are no adequate

23 remedies available. . . . In such circumstances, the interest of preserving the

24 Supremacy Clause is paramount." *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d

25 847, 853 (9th Cir. 2009), reiterated in *United States v. California*, 921 F.3d 865, 893–

26 94 (9th Cir. 2019); *see also Am. Trucking Ass'ns*, 559 F.3d at 1059–60 (determining

27 that the balance of equities and the public interest weighed in favor of enjoining a

28 likely preempted ordinance).

1   Conversely, the Defendants cannot be injured by an injunction pending appeal

2   given Section 1021.11's patent unconstitutionality. *See, e.g.*, *Rodriguez v. Robbins*,

3   715 F.3d 1127, 1145 (9th Cir. 2013) (recognizing that the government "cannot suffer

4   harm from an injunction that merely ends an unlawful practice . . . ."); *see also Zepeda*

5   *v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) (the state "cannot reasonably assert

6   that it is harmed in any legally cognizable sense by being enjoined from constitutional

7   violations"). Furthermore, the public interest is unquestionably served by preserving

8   access to the courts for Plaintiffs who seek to vindicate their constitutional rights,

9   rather than by permitting the government to insulate certain laws from judicial

10  scrutiny.

11  **D.      The Court Should Waive Bond Or Require Only Nominal Security.**

12  Because Defendants will not suffer monetary hardship and this matter involves

13  a constitutional violation and the public interest, the Court should either waive bon

14  under Rule 62(d) or impose only a nominal bond. *See, e.g.*, *Barahona-Gomez v. Reno*,

15  167 F.3d 1228, 1237 (9th Cir. 1999) (district court has "discretion as to the amount of

16  security required, if any"); *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126

17  (9th Cir. 2005) ("requiring nominal bonds is perfectly proper in public interest

18  litigation").

19

20

21

22

23

24

25

26

27

28

# V.  CONCLUSION

For the reasons set forth above, the Court should enter an injunction pending appeal enjoining Defendants from enforcing or applying the fee-shifting penalty set forth in California Code of Civil Procedure section 1021.11 against Plaintiffs, Plaintiffs' members, and any attorney or law firm representing any Plaintiff in any litigation involving Defendants potentially subject to Section 1021.11's fee-shifting penalty.

Dated:  February 2, 2024            BENBROOK LAW GROUP, PC


                                                 By  s/ Bradley A. Benbrook
                                                 _____
                                                 BRADLEY A. BENBROOK
                                                 Attorneys for Plaintiffs